598 S.E.2d 740

**LAZER CONSTRUCTION COMPANY, INC., Respondent,**

**v.**

**Arnold H. VALENTINE, Individually and d/b/a Financial Benefits, Inc., Appellant.**

**No. 3838.**

Court of Appeals of South Carolina.

Submitted May 12, 2004.

Decided June 25, 2004.

Hamilton Osborne, Jr., James Y. Becker, and Sarah P. Spruill, all of Columbia, for Appellant.

Robert L. Waldrep, Jr., of Anderson, for Respondent.

GOOLSBY, J.:

In this negligence action, Arnold H. Valentine, individually and d/b/a Financial Benefits, Inc. (Valentine) appeals a jury verdict in favor of Lazer Construction Company. We reverse and remand.[1]

## FACTS AND PROCEDURAL HISTORY

Lazer is a South Carolina corporation engaged in the construction business. To promote employee retention, it has provided health insurance for its workers since 1984. As a cost-saving measure, it has followed the practice of changing health insurance providers about every two years.

In late 1996, on the recommendation of office manager Nancy Simms, Lazer employed Valentine to procure health insurance for its employees. After Valentine had presented to Lazer coverage options from several sources, Lazer selected

---

1. Because oral argument would not aid the court in deciding the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

health plans administered by The Fidelity Group (collectively referred to as "the plan"). Lazer enrolled its employees in the plan on April 1, 1997.

The application for participation and membership in the plan stated the plan was regulated under the Federal Employee Retirement Income Security Act of 1974, as amended, and was not subject to minimum standards or mandated benefits provisions of the insurance laws of any state. Furthermore, according to Valentine's information, Fidelity had reinsurance arrangements with Reliance Indemnity.

The South Carolina Department of Insurance advised Valentine by letter dated May 13, 1997, that it was investigating the plan because it had reason to believe that the plan was governed by state law and that Valentine, in marketing and selling the plan, had failed to comply with certain statutes. The letter further instructed Valentine to "cease immediately all marketing and sales of [the plan], and related plans within the State of South Carolina." In July 1997, Lazer learned through Simms of the pending investigation. In addition, in August or September 1997, it became apparent to Lazer that there were problems with employee claims not being paid.

Valentine also learned that, contrary to his earlier information, the plan was not backed with reinsurance arrangements by Reliance Indemnity, but did not inform Lazer about this problem. Valentine, however, did become concerned that Fidelity was having too many problems to work through and communicated this concern to several of its clients, including Lazer. With regard to Lazer, Arnold Valentine told Simms that they "needed to start putting together alternate plans to be ready to exit Fidelity." To that end, Valentine presented other plan options to Lazer in October 1997. Lazer, however, re-enrolled in the plan on April 1, 1998.

In May 1998, Arnold Valentine attended a meeting in Summerville held by two other agents who had also distributed the plan. After the meeting, Valentine undertook to set up a system to document claims for payment from the plan. Sometime shortly after the meeting, Arnold Valentine met with Simms and Ken Hicks, the president of Lazer, to discuss the status of the plan to determine whether Lazer should move to another provider for coverage. Although Valentine informed

Hicks of his concerns about the plan and Hicks and Simms monitored the situation closely, Lazer did not authorize Valentine to change its coverage to another company until August 1998.

Lazer then sued for damages, alleging Valentine sold an underfunded health and medical policy issued by a company not licensed to do business in South Carolina. The complaint listed four causes of action: breach of contract, negligence, fraud, and unfair trade practices. Valentine answered and alleged several defenses, including comparative negligence and assumption of the risk.

The trial proceeded solely on Lazer's claims of negligence and gross negligence. At the close of the testimony, the trial court granted Lazer's motion for a directed verdict as to Valentine's liability. The trial court also struck Valentine's defenses of comparative negligence and assumption of the risk and refused to charge the jury on either defense.

The jury awarded Lazer actual and punitive damages. The trial court denied Valentine's post-trial motions, and this appeal follows.

## LAW/ANALYSIS

■ Valentine contends the trial court erred in directing a verdict on the issue of liability. We agree.

■ "To establish a cause of action in negligence, a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." [2] Furthermore, "[a] determination of negligence, standing alone, is a far cry from a determination of liability. Liability encompasses all elements of a negligence claim, including damages proximately caused by the alleged negligence." [3]

The trial court determined Lazer was entitled to a directed verdict on the issue of liability because John O'Brien, its expert, testified that Valentine had breached its duty to Lazer

2. *Bloom v. Ravoira,* 339 S.C. 417, 422, 529 S.E.2d 710, 712 (2000).

3. *Hinds v. Elms,* 358 S.C. 581, 585, 595 S.E.2d 855, 857 (Ct.App.2004).

in failing to investigate adequately the funding, licensing, and insurance rating of the plan. This testimony, however, does not *conclusively* establish that Valentine had breached any duty to Lazer or that the alleged deficiencies in Valentine's performance were the proximate cause of Lazer's damages.

Indeed, O'Brien acknowledged that Valentine, in investigating the plan, acted reasonably in relying on the advice and judgment of other agents, health care providers, and satisfied customers, as well as on the fact that several large companies had contracted with the plan. He also agreed that an insurance agent would not have the authority to switch a customer to another plan without the customer's consent.

Furthermore, as counsel for Valentine noted, Valentine had communicated concerns to Lazer about the plan and quoted alternatives as early as October 1997. In addition, Arnold Valentine testified that he had spoken with Simms about the matter during the fall of 1997, advising her of the need to explore other programs so that Lazer would be ready to drop its coverage with Fidelity. Lazer, however, though aware of these concerns, re-enrolled in the plan in April 1998 and did not change its coverage until the following August.

Under these circumstances, we hold the trial court should have allowed the jury to determine whether Valentine had breached its duty of care to Lazer and whether the alleged breach of this duty was the proximate cause of Lazer's damages.[4] We therefore reverse the jury verdict on this ground and remand the case for a new trial.[5]

**REVERSED AND REMANDED.**

HOWARD and BEATTY, JJ., concur.

---

**4.** *See Oliver v. South Carolina Dep't of Highways and Pub. Transp.,* 309 S.C. 313, 317, 422 S.E.2d 128, 131 (1992) ("[L]egal cause is ordinarily a question of fact for the jury. Only when the evidence is susceptible to only one inference does it become a matter of law for the court."); *Miller v. City of Camden,* 317 S.C. 28, 31, 451 S.E.2d 401, 403 (Ct.App.1994) (stating that, although the trial court determines the existence and scope of a duty, "[t]hereafter, the jury determines whether a breach of the duty has occurred, resulting in damages"), *aff'd as modified,* 329 S.C. 310, 494 S.E.2d 813 (1997).

**5.** We do not address Valentine's arguments on appeal concerning comparative negligence, assumption of the risk, and the evidence supporting Lazer's claim for damages.