2253

Ethel MILLER, Plaintiff v. CITY OF CAMDEN, and The Kendall Company, Defendants. Henry MILLER, Plaintiff v. CITY OF CAMDEN, and The Kendall Company, Defendants. Henry MILLER, as Personal Representative of the Estate of Fletcher Levar Miller, deceased, Plaintiff v. CITY OF CAMDEN, and The Kendall Company, Defendants. Henry MILLER, as Personal Representative of the Estate of Felicia Tyrette Miller, deceased, Plaintiff v. CITY OF CAMDEN, and The Kendall Company, Defendants. Jerry HENRY, individually, and as Personal Representative of the Estate of Jason Lamont Henry, deceased, Plaintiff v. CITY OF CAMDEN, and The Kendall Company, Defendants. Mattie Ellerby JACKSON, Personal Representative of the Estate of John Ellerby, deceased, Plaintiff v. CITY OF CAMDEN, and The Kendall Company, Defendants, Of Whom Henry Miller, Ethel Miller, Jerry Henry and Mattie Ellerby Jackson are Appellants, and The Kendall Company is Respondent.

(451 S.E. (2d) 401)

Court of Appeals

*Desa A. Ballard* and *Allard A. Allston, III,* both of *Ness, Motley, Loadholt, Richardson & Poole,* Barnwell, and *Thomas D. Broadwater,* Columbia, *for appellants.*

*Robert J. Sheheen,* of *Savage, Royall & Sheheen,* Camden, *for respondent.*

Heard Oct. 4, 1994.

Decided Oct. 31, 1994; Reh. Den. Dec. 7, 1994.

HOWARD, Acting Judge:

These six negligence actions for wrongful death and personal injury arise out of a flood which occurred in Camden, South Carolina on October 10, 1990. The circuit court granted summary judgment to The Kendall Company (Kendall), finding Kendall owed no duty of care to appellants. We reverse and remand.

Kendall Lake, formerly known as Wateree Pond, is a reservoir of approximately 41 acres. The reservoir was originally built to facilitate production at The Kendall Company textile plant, which is located adjacent to the reservoir, in close proximity to the Kendall Lake Dam. On November 7, 1961, Kendall conveyed the dam, the lake and the adjoining woods to the City of Camden as a donation. The city uses the lake water to supplement its water supply. Kendall continues to use the water in the reservoir for various production, cooling and fire safety purposes, having entered into an agreement with the City of Camden for water rights. Kendall also retained an easement across the property to maintain, repair or replace intake piping as necessary.

The level of water in the reservoir is controlled by two "sluice gates." These gates are opened or closed by hand-

turned wheels, having a size and appearance much like automobile steering wheels. These wheels are locked by threading a chain through the spokes of each wheel and around the adjacent metal handrail. The chain is then padlocked, requiring a key to open it.

After the conveyance, Kendall transferred all keys for the padlock to the City of Camden, without explanation, at some time prior to 1984. Since that time it has not had keys to open the sluice gates.

Subsequent surveys and engineering studies indicate Kendall inadvertently retained several feet of property upon which a portion of the foot of the dam is located. It is at this place that appellants assert the dam broke. This strip of land appears on the survey as an encroachment on Kendall's property.

On October 10, 1990, heavy rains inundated Camden at such a rate that the reservoir overflowed, the dam was breached, and waters flooded the property below. The sluice gates were not opened. Appellants and their relatives were traveling on Highway 1, which is below the dam. Their car was overtaken by the floodwater, resulting in death and injury to the occupants.

The circuit court held that the ownership of the small strip of land by Kendall, whether by design or through inadvertence, was not sufficient ownership of the dam property to give rise to a duty to third persons. The court concluded, "Nothing Kendall did or could have done with this small strip of land could have prevented the ultimate tragedy." The court further held that no duty arose by virtue of the easement or the statutory provisions found in the *Dams and Reservoirs Safety Act*, S.C. Code Ann. §§ 49-11-110 to - 260 (1987 & Supp. 1993). It reasoned these statutory provisions are regulatory in nature and do not provide a private cause of action. Even if they did, the court held Kendall was not an owner within the purview of the Act.[1]

Summary judgment is only appropriate when there are no factual issues presented, and the moving party is entitled to

[1] Appellants do not contest this ruling, and thus, it is the law of the case. *E.g., Burton v. County of Abbeville,* — S.C. —, 440 S.E. (2d) 396 (Ct. App. 1994). For that reason, we do not address the status of Kendall as an owner under the Act, or application of the Act to a private cause of action.

judgment as a matter of law. All evidence must be viewed in a light most favorable to the nonmoving party, and all reasonable inferences resolved in the same manner. *Standard Fire Ins. Co. v. Marine Contracting & Towing Co.*, 301 S.C. 418, 392 S.E. (2d) 460 (1990); *Estate of Cantrell by Cantrell v. Green*, 302 S.C. 557, 397 S.E. (2d) 777 (Ct. App. 1990).

The issue of negligence is a mixed question of law and fact. The court must first determine whether a duty arises in one party to exercise reasonable care for the benefit of another under the facts of a given case. The existence and scope of the duty are questions of law. *Ballou v. Sigma Nu General Fraternity*, 291 S.C. 140, 352 S.E. (2d) 488 (Ct. App. 1986). Thereafter, the jury determines whether a breach of the duty has occurred, resulting in damages. *Cantrell*, 302 S.C. at 560, 397 S.E. (2d) at 779.

We agree with the circuit court that no duty arose from Kendall to appellants by virtue of the incidental and inadvertent retention of an insignificant strip of land upon which a small portion of the dam is located. As recognized in *Dunbar v. Charleston & W.C. Ry. Co.*, 211 S.C. 209, 216, 44 S.E. (2d) 314, 317 (1947), liability of an owner of property "depends upon control, rather than ownership, of the premises." Kendall clearly intended to divest itself of ownership of the dam by the wording of the deeds of conveyance. Kendall has exerted no specific control over that portion of the dam encroaching on its land by virtue of any claim of ownership. Indeed, the City of Camden has drained the reservoir on two occasions since the transfer of ownership and completed repairs to the dam without seeking permission from Kendall.

While we agree that no duty arose from this incidental ownership, we disagree with the circuit judge in his finding that no duty to protect third parties arose out of the Kendall/City of Camden relationship. To arrive at our conclusion, further analysis of the facts is required.

Although Kendall conveyed the dam and lands to the City of Camden, it reserved to itself the right to water usage and control as outlined in a written agreement, dated February 12, 1962. The agreement provides that Kendall has the right to withdraw water from the reservoir for fire protection and manufacturing purposes. A pipe extends from the reservoir

to the boiler room of Kendall, and the water in the reservoir must be maintained at a height sufficient for Kendall to remain operational. However, if the water is too high, it backs up into the boiler room. In that event, the boilers must be shut down, and the production cost to Kendall is approximately $22,000 per day. The City of Camden agreed, therefore, to either maintain the water at the appropriate level for Kendall or provide city water to Kendall as an alternative. The agreement provided the level in the reservoir would be "maintained at approximate[ly] spillway level."

In 1979 the United States Army Corps of Engineers, Charleston District, investigated the Kendall Lake Dam as part of a national program of inspection of non-federal dams. The stated purpose of the study was "to identify expeditiously those dams which may pose hazards to human life or property." According to the final report, the dam was noted as being owned by the City of Camden and Kendall Mills. The dam was given a hazard classification of "high" because of the "potential for property damage and/or loss of life in the event of dam failure." The report stated, "The plant engineer for Kendall Mills and the City Manager for the City of Camden are in constant communication during heavy rainstorms to determine when the sluice gate needs to be opened." The report also noted there was no warning system in effect in case of flooding, and during heavy rainfalls the sluice gates were opened to pass additional flood waters.

This report was mailed to the Kendall Mills engineer and to the City of Camden, with request for a follow-up meeting to discuss the report and plans for carrying out recommendations. The record contains a *MEETING REPORT* dated September 6, 1979, which Mike Scronce, a Kendall engineer, attended along with the Mayor of Camden and the City Manager. The Corps of Engineer's inspection report and a safety program were discussed. Significantly, the report concluded with the following comment: "An Emergency Alert Notification form was prepared during [the] meeting and is attached." This form, which also appears in the record, names Mike Scronce and G.H. McCaa, a Kendall foreman, as the personnel assigned to monitor the Kendall Lake Dam. Another such Emergency Notification Form was filed by the City of Camden approximately two months before the flood, also naming a

Kendall engineer and foreman as personnel assigned to monitor the dam.

The Director of Public Works for the City of Camden testified in his deposition that he "envisioned" the monitoring of the lake level during unusual amounts of rainfall to occur by the Kendall employees calling his office or the police department. He estimated the number of sluice gate openings between 1979 and 1980 at 50 to 75, with the majority instigated by a Kendall employee.

An affirmative legal duty to act exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance. *Rayfield v. South Carolina Dep't of Corrections*, 297 S.C. 95, 374 S.E. (2d) 910 (Ct. App. 1988), *cert. denied*, 298 S.C. 204, 379 S.E. (2d) 133 (1989). Here, Kendall established a relationship through contract, interest in property, and as a volunteer, by which a duty arose to use reasonable care to monitor the lake level and take precautions for persons downstream.

Kendall argues it had no absolute authority or present capability to open the sluice gates at the time of the flood because it had no key. Therefore, Kendall postulates it had no control over the dam. However, while Kendall divested itself of the keys to the sluice gates, it continued to exert control over the artificially high level of water under the agreement with the City of Camden. Clearly, the city was obligated as a result of the contract to maintain the water at spillway level or to provide alternative sources of water to Kendall. Thus, Kendall indirectly controlled the level of water. Further, Kendall retained the benefits of the artificially high level of water for its purposes, indeed, the purposes for which the dam was originally built. As stated in *Dunbar*, 211 S.C. 209, 44 S.E. (2d) 314, liability is based on control of the property, not ownership. *See also Richland County v. Anderson*, 129 Mont. 559, 291 P. (2d) 267 (1955). Under the arrangement with the City of Camden, Kendall indirectly maintained substantial control over the artificially high level of water and the instrument by which it was maintained: the dam.

Equally convincing is the duty which Kendall undertook to monitor the lake level, whether or not it was obligated to do so. Our court has long recognized that one who assumes to act, even though under no obligation to do

so, thereby becomes obligated to act with due care. *Crowley v. Spivey*, 285 S.C. 397, 329 S.E. (2d) 774 (Ct. App. 1985); *see also Roundtree Villas Ass'n v. 4701 Kings Corp.*, 282 S.C. 415, 321 S.E. (2d) 46 (1984); *Salvo v. Hewitt, Coleman & Assocs., Inc.*, 274 S.C. 34, 260 S.E. (2d) 708 (1979); *Bryant v. City of North Charleston*, 304 S.C. 123, 403 S.E. (2d) 159 (Ct. App. 1991). As succinctly stated in the Restatement (Second) of Torts § 324A (1989):

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*See also Sherer v. James*, 290 S.C. 404, 351 S.E. (2d) 148 (1986) (recognizing analogous § 323(a) of the Restatement (Second) of Torts establishes a duty on one who undertakes to render services for protection of another to use due care to avoid increasing the risk of harm).

In this case, Kendall participated with the Corps of Engineers in the meeting in which dam safety was addressed. The report recognized the danger to downstream occupants, including those on highways. Kendall was represented at the meeting by its engineer, who along with the foreman, was named as the responsible party to monitor lake levels in the Emergency Notification Form. In practice, Kendall employees monitored the lake water levels, and the City of Camden opened or closed the sluice gates at their request. According to the testimony of the city's public works manager, it relied, rightly or wrongly, on the monitoring by Kendall employees.

In summary, Kendall maintained control over the water level above the dam and voluntarily undertook emergency monitoring. Under these circumstances, we conclude Kendall owed a duty to third persons to use reasonable care in the operation of the Kendall Lake Reservoir and Dam to protect

them from the risk of harm created thereby. Whether or not Kendall exercised such care is a question of fact for the jury.

For all the foregoing reasons, the judgment of the lower court is

Reversed and remanded.

GOOLSBY and CONNOR, JJ., concur.