638 S.E.2d 650

**MADISON, a fictitious name of a mentally disabled person, through her court-appointed guardian, Brenda BRYANT, Appellant,**

**v.**

**BABCOCK CENTER, INC., a South Carolina Corporation; South Carolina Department of Disabilities and Special Needs; and Michelle Batchelor, in her official and individual capacities, Respondents.**

No. 26198.

Supreme Court of South Carolina.

Heard March 7, 2006.
Refiled Nov. 20, 2006.
Rehearing Denied Dec. 27, 2006.

---

128

Orin G. Briggs, of Lexington, for Appellant.

Danny C. Crowe and R. Hawthorne Barrett, of Turner, Padget, Graham & Laney, P.A., of Columbia, for Respondents Babcock Center, Inc. and Michelle Batchelor.

William H. Davidson, II and Andrew F. Lindemann, of Davidson, Morrison, and Lindemann, P.A., of Columbia, for Respondent South Carolina Department of Disabilities and Special Needs.

Acting Justice COLE:

In this appeal, we are asked to decide the novel issue of whether a private treatment center owes a duty to exercise reasonable care in supervising a mentally retarded person admitted to its care; the novel issue of whether a state agency which has a contract with the center owes a duty of care to the person; and whether the mentally retarded person in this case, as a matter of law, proximately caused her own injuries.

## FACTUAL AND PROCEDURAL BACKGROUND

It is undisputed that Madison [1] (Appellant), now thirty-two years old, is a mentally retarded woman with disabilities and

---

1. Madison is a fictitious name. We will refer to her as Appellant for purposes of clarity even though the named plaintiff is her mother and guardian, Brenda Bryant.

special needs. Babcock Center, Inc. (Babcock Center), its employee Michelle Batchelor, and the South Carolina Department of Disabilities and Special Needs (Department) in their answers admit Appellant "has been diagnosed as mildly mentally retarded" and is a "person with disabilities and special needs." [2]

Appellant was voluntarily admitted as a client in 1994, when she was twenty years old, to a residential home managed by Babcock Center. Babcock Center is a private, non-profit corporation based in Columbia that provides housing and other services for people with autism, mental retardation, head or spinal injuries, or related disabilities. Department has approved Babcock Center as a contractual provider of such services, and the program at issue in this case is the Community Training Home Program II. This residential program offers mentally retarded persons the opportunity to live in the community and receive individualized supervision and support services. Appellant alleges Department coordinates, directs, funds, and oversees the provision of services by contractual providers such as Babcock Center. Appellant further alleges Department, along with its county-based boards, is responsible for performing timely and adequate developmental evaluations of clients and assisting providers in determining the level of care and services required.

Appellant, although physically an adult, alleges she has the emotional and intellectual maturity of a seven- to ten-year-old child. She can read, write, and understand math at the level of a first- or second-grade child. Appellant alleges her mental disability means she is not able to live or work independently. She cannot, for example, cook, wash clothes, run bath water, use a toaster oven, put on her own makeup, or perform personal hygiene tasks without adult supervision. Appellant cannot tell time, understand a sequence of dates or use a calendar, make change for a dollar, or give or follow simple geographical directions. Appellant is not allowed to leave either her parent's home or the Babcock Center home without permission and adult supervision.

---

2. References to Babcock Center include the center and Batchelor, its employee. We will refer to the three defendants collectively as Respondents.

While living at Babcock Center, Appellant worked at an animal shelter and a dump site sorting recyclable materials. Babcock Center personnel took her to and from work, where she was supervised by a job coach. Appellant's "lack of perspective and judgment is so limited that she needs help with every significant decision she makes about even the smallest matters that require assessment of consequences, potential danger, or comparing alternative courses of action," according to Brenda Bryant, Appellant's mother and court-appointed guardian.

On August 30, 1995, Appellant, then twenty-one years old, placed her luggage on the front porch of the Babcock Center home and went to bed fully clothed. After everyone was asleep, she secretly slipped out of the house sometime after 1 a.m. and left in a car with two men who either lived or recently had lived in a home managed by Babcock Center. Another woman already was in the car. Appellant believed the four of them planned to go to an unknown location and set up housekeeping on their own. Instead, the other woman was taken home a short while later after an argument.

Appellant and the two men went to a house, where she had sex with one or both of them. Appellant initially told police and her mother she was raped, but testified at a deposition in this case she was "talked into having sex." Appellant returned to her Babcock Center home the following morning. Appellant alleges she was a virgin when she was admitted to the Babcock Center home. She contracted herpes simplex type I, a sexually transmitted disease, after one or more sexual encounters with men while staying at the Babcock Center home.

A probate court judge in 1997 issued an order appointing Appellant's mother as her guardian and conservator. The judge found Appellant was mentally retarded and lacked the capacity to exercise good judgment with regard to her person, assets, and financial affairs.

Appellant's amended complaint alleges causes of action for negligence, gross negligence, and willful indifference against Respondents. Appellant alleges, among other things, that both Babcock Center and Department owed a duty of care to Appellant, which they breached by failing to exercise sufficient

control and supervision over Appellant and other Babcock Center residents. Appellant alleges both entities failed to properly supervise facility staff, both failed to heed the previous warnings of Appellant's mother about inappropriate sexual contacts between Appellant and current or former male residents of Babcock Center, and both ignored the requests of her parents that she be released from Babcock Center. Appellant's mother testified that, prior to August 30, 1995, she personally made repeated complaints about the sexual contacts to staff at the Babcock Center home where Appellant lived, Babcock Center director Risley Linder, and James Hill, Department's general counsel.

The circuit court granted summary judgment to Respondents. The judge ruled in two separate orders that, as a matter of law, Respondents "had no legal duty to maintain a constant watch over the plaintiff so as to prevent her surreptitious elopement." Furthermore, the proximate cause of any damages suffered by Appellant, as a matter of law, was Appellant's "own voluntary and intentional acts."

Appellant appealed. We certified this case for review from the Court of Appeals pursuant to Rule 204(b), SCACR.

## ISSUES

I. Did the circuit court err in granting summary judgment to Babcock Center on the ground it owes no legal duty of care to Appellant, a mentally retarded client voluntarily admitted to its care?

II. Did the circuit court err in granting summary judgment to Department on the ground it owes no legal duty of care to Appellant, a mentally retarded client voluntarily admitted to Babcock Center, a contractual provider of services?

III. Did the circuit court err in granting summary judgment to Respondents on the ground that, as a matter of law, the proximate cause of any injuries and damages suffered by Appellant were the result of her own voluntary and intentional acts?

IV. Did the circuit court err in ruling that certain allegations against Department are time-barred by the statute of limitations?

## STANDARD OF REVIEW

A trial court may properly grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *Tupper v. Dorchester County*, 326 S.C. 318, 487 S.E.2d 187 (1997). In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party. *Manning v. Quinn*, 294 S.C. 383, 365 S.E.2d 24 (1988). Summary judgment is a drastic remedy which should be cautiously invoked so that a litigant is not improperly deprived of a trial on disputed factual issues. *Baughman v. American Tel. and Tel. Co.*, 306 S.C. 101, 112, 410 S.E.2d 537, 543 (1991).

On appeal from an order granting summary judgment, the appellate court applies the same standard that governs the trial court. The appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the appellant, the non-moving party below. *Osborne v. Adams*, 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001); *Williams v. Chesterfield Lumber Co.*, 267 S.C. 607, 230 S.E.2d 447 (1976).

In a case raising a novel question of law, the appellate court is free to decide the question with no particular deference to the lower court. *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 411, 526 S.E.2d 716, 719 (2000) (citing S.C. Const. art. V, §§ 5 and 9, S.C.Code Ann. §§ 14-3-320 and – 330 (1976 & Supp. 2005), and S.C.Code Ann. § 14-8-200 (Supp.2005)); *Osprey, Inc. v. Cabana Ltd. Partnership*, 340 S.C. 367, 372, 532 S.E.2d 269, 272 (2000) (same); *Clark v. Cantrell*, 339 S.C. 369, 378, 529 S.E.2d 528, 533 (2000) (same).

## DISCUSSION

### I. DUTY OF CARE OWED BY BABCOCK CENTER

Appellant argues the circuit court erred in granting summary judgment to Babcock Center on the ground it owes no

legal duty of care to Appellant, a mentally retarded client voluntarily admitted to the center's care. Babcock Center has a duty to exercise reasonable care in supervising and providing care and treatment to clients in its custody. We agree.

We conclude the circuit court erred in accepting Respondents' argument that Babcock Center either had a "twenty-four-hour, eyes-on" duty of supervision—i.e., an extremely high and rigorous duty—or no duty at all. The circuit court in its order repeatedly described the purported duty as one of maintaining "constant watch" over Appellant. Appellant at the summary judgment hearing contended the duty was one of reasonable supervision, but the circuit court and Respondents appeared overly focused on the "high duty" versus "no duty" positions.

Respondents' position results in a distorted view of the center's duty because, first, it assumes an all-or-nothing approach with regard to the existence of a duty. *Cf. Cunningham ex rel. Grice v. Helping Hands, Inc.,* 352 S.C. 485, 493, 575 S.E.2d 549, 553 (2003) (disagreeing with Court of Appeals' conclusion that children's shelter had an enhanced or specific duty to protect child at all times, instead reasoning that under circumstances presented shelter had only a general duty to supervise a child in its care; thus, the defense of assumption of risk was applicable as law then existed). Second, Respondents' position confuses the existence of a duty with standards of care establishing the extent and nature of the duty in a particular case, standards by which a fact finder may judge whether a duty was breached. Such standards are grounded in the common law, statutes, regulations, or policies and guidelines promulgated by Babcock Center or Department.

In a negligence action, a plaintiff must show that (1) the defendant owes a duty of care to the plaintiff, (2) the defendant breached the duty by a negligent act or omission, (3) the defendant's breach was the actual and proximate cause of the plaintiff's injury, and (4) the plaintiff suffered an injury or damages. *Steinke v. S.C. Dept. of Labor, Licensing and Regulation,* 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999); *Shipes v. Piggly Wiggly St. Andrews, Inc.,* 269 S.C. 479, 238 S.E.2d 167 (1977). The court must determine, as a matter of law, whether the law recognizes a particular duty. If there is

no duty, then the defendant in a negligence action is entitled to a judgment as a matter of law. *Steinke* 336 S.C. at 387, 520 S.E.2d at 149; *Ellis v. Niles,* 324 S.C. 223, 227, 479 S.E.2d 47, 49 (1996).

Under South Carolina common law, there is no general duty to control the conduct of another or to warn a third person or potential victim of danger. We have recognized five exceptions to this rule: (1) where the defendant has a special relationship to the victim; (2) where the defendant has a special relationship to the injurer; (3) where the defendant voluntarily undertakes a duty; (4) where the defendant negligently or intentionally creates the risk; and (5) where a statute imposes a duty on the defendant. *Faile v. S.C. Dept. of Juvenile Justice,* 350 S.C. 315, 334, 566 S.E.2d 536, 546 (2002) (listing cases and authority supporting each proposition). An affirmative legal duty may be created by statute, a contractual relationship, status, property interest, or some other special circumstance. *Jensen v. Anderson County Dept. of Soc. Servs.,* 304 S.C. 195, 199, 403 S.E.2d 615, 617 (1991); *Miller v. City of Camden,* 317 S.C. 28, 33–34, 451 S.E.2d 401, 404 (Ct.App.1994). Moreover, it has long been the law that one who assumes to act, even though under no obligation to do so, thereby becomes obligated to act with due care. *Sherer v. James,* 290 S.C. 404, 406, 351 S.E.2d 148, 150 (1986); *Roundtree Villas Assn. v. 4701 Kings Corp.,* 282 S.C. 415, 423, 321 S.E.2d 46, 50–51 (1984); *Miller,* 317 S.C. at 33–34, 451 S.E.2d at 404.

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." Restatement (Second) of Torts § 323 (1965). In addition, "[o]ne who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or (b)

the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him." Restatement (Second) of Torts § 324 (1965).

The present case falls within the first, third, fourth, and fifth exceptions specified in *Faile,* as well as within the circumstances outlined in Restatement (Second) of Torts §§ 323–324.

 Babcock Center had a special relationship with Appellant because she was a client with special needs and disabilities admitted for care and treatment at the center. Babcock Center voluntarily undertook the duty of supervising and caring for Appellant as provided in its contractual relationship with Department. Babcock Center allegedly acted negligently in creating the risk of injury to Appellant by not properly supervising her and allowing improper sexual contacts between Appellant and men. Furthermore, the center had a statutory duty to exercise reasonable care in supervising Appellant. *See e.g.* S.C.Code Ann. § 44–20–30(2), (11), and (16) (2002) (defining client, mental retardation, and residential programs); S.C.Code Ann. §§ 44–20–710 to –1000 (2002) (addressing licensing of facilities and programs for mentally disabled persons); S.C.Code Ann. §§ 44–26–10 to –220 (2002) (rights of mental retardation clients).[3] In short, Babcock Center undertook a duty, for consideration, to render services to Appellant which the center should have recognized as necessary for the protection of Appellant. Thus, Babcock Center had a duty to control Appellant's conduct to the extent necessary to prevent her from harming herself or to prevent others from harming her while staying at the center.

---

3. Neither the record nor the briefs contain a thorough review or assessment of various statutes and regulations pertaining to the care of mentally disabled or retarded persons. Given the posture of this case and our primary conclusion that a duty exists under the common law to exercise reasonable care in supervising and providing care to such persons, we have not attempted to fully ascertain the impact of various statutes or regulations, or identify all statutes and regulations which may be relevant in establishing a duty or defining the appropriate standard of care. Such issues may be explored by the parties and court on remand of this case.

The fact Appellant was a voluntary admittee is irrelevant in deciding whether she is owed a duty of care. As long as Appellant was living as a client at a Babcock Center home—whether voluntarily or involuntarily—Babcock Center owed a duty of care to her. *See e.g.* S.C.Code Ann. § 44–20–460 (2002) ("person admitted or committed to the services of the department remains a client and is eligible for services until discharged"); *cf. Kolpak v. Bell,* 619 F.Supp. 359, 377–79 (D.Ill.1985) (finding much logic in cases that find voluntary and involuntary residents are entitled to the same constitutional rights to a safe environment in actions brought under 42 U.S.C. § 1983, and listing cases). "These cases recognize that for all practical purposes, many of the residents of state-run mental institutions are effectively admitted involuntarily: they may have been admitted upon the unilateral application of their parents or guardians; they may be incapable of expressing a desire to enter or to leave; they may be involuntarily committed when they apply for discharge; or their financial circumstances may be such that admission, voluntary or involuntary, is a foregone conclusion." *Id.* at 378–79.

█ Accordingly, we hold that, under the common law, a private person or business entity which accepts the responsibility of providing care, treatment, or services to a mentally retarded or disabled client has a duty to exercise reasonable care in supervising the client and providing appropriate care and treatment to the client. *See Lee v. Dept. of Health and Rehabilitative Servs.,* 698 So.2d 1194, 1199 (Fla.1997) (mentally retarded woman who became pregnant while in custody of state agency stated cause of action for negligence against agency employees who allegedly failed to follow agency's rules and carry out their assigned duties in supervising patients); *Butler v. Circulus, Inc.,* 557 S.W.2d 469, 475 (Mo.App.1977) (mentally retarded minor plaintiff who was resident and student at defendant's licensed institution stated cause of action for negligence against defendant for failing to supervise employees who allegedly physically and mentally abused plaintiff as part of a behavior modification program); Restatement (Second) of Torts §§ 323–324; *cf. Rogers v. S.C. Dept. of Parole & Comm. Corrections,* 320 S.C. 253, 464 S.E.2d 330 (1995) (holding that common law duty to warn arises when a person being released from custody has made a specific threat

of harm directed at a specific individual); *Youngberg v. Romeo*, 457 U.S. 307, 319, 102 S.Ct. 2452, 2460, 73 L.Ed.2d 28 (1982) (under substantive component of Fourteenth Amendment's Due Process Clause, state must provide involuntarily committed mental patients with services necessary to ensure their reasonable safety from themselves and others, as well as freedom from undue restraint); *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 201–02, 109 S.Ct. 998, 1006, 103 L.Ed.2d 249 (1989) (while substantive component of Fourteenth Amendment's Due Process Clause did not protect child beaten to death by his father after state agency failed to remove child from home, "it may well be that, by voluntarily undertaking to protect Joshua against a danger it concededly played no part in creating, the State acquired a duty under state tort law to provide him with adequate protection against that danger").[4]

We further hold that, if Appellant proves at trial she has the limited emotional and intellectual capacity she has demonstrated at the summary judgment stage, Appellant should be treated as the equivalent of a willful, immature child who really has no idea of what is best for her in determining whether Babcock Center breached the duty of care owed to her. "Children, wherever they go, must be expected to act upon childish instincts and impulses; and others, who are chargeable with a duty of care and caution towards them must

4. The mother of the mentally retarded adult male in *Youngberg* alleged violations of her son's constitutional rights pursuant to 42 U.S.C. § 1983. While Section 1983 cases may shed light generally on the rights of mentally retarded or disabled persons and the responsibilities of their caregivers, such cases are controlled by different standards than tort cases sounding in common law negligence. *See e.g. Kyle K. v. Chapman*, 208 F.3d 940 (11th Cir.2000) (addressing § 1983 lawsuit brought pursuant to *Youngberg* by parents of mentally retarded child who allegedly was physically and mentally abused by various mental health professionals, administrators, and direct care personnel at state mental hospital); *White by White v. Chambliss*, 112 F.3d 731 (4th Cir.1997) (addressing § 1983 lawsuit brought in connection with death of child in foster home and discussing different standards at issue in negligence and § 1983 actions); *Fialkowski v. Greenwich Home for Children, Inc.*, 921 F.2d 459 (3d Cir.1990) (nonprofit organization which performed mental health intake and referral services for county may have acted negligently in failing to recommend feeding restrictions for profoundly retarded adult male with eating disorder, but organization did not violate victim's Fourteenth Amendment due process rights).

calculate upon this and take precautions accordingly." *Franks v. Southern Cotton Oil Co.,* 78 S.C. 10, 18, 58 S.E. 960, 962 (1907).

In *Standard v. Shine,* 278 S.C. 337, 295 S.E.2d 786 (1982), we abandoned age-based presumptions previously used in assessing whether an injured child's own negligence contributed to his injury. "The capacities of children vary greatly, not only with age, but also with individuals of the same age. Therefore, no very definite statement can be made to just what standard is to be applied to them.... Of course, a child of tender years is not required to conform to an adult standard of care.... [A] minor's conduct should be judged by the standard of behavior to be expected of a child of like age, intelligence, and experience under like circumstances." *Id.* at 339, 295 S.E.2d at 787; *accord Jones ex rel. Castor v. Carter,* 336 S.C. 110, 117, 518 S.E.2d 619, 622 (Ct.App.1999); *Brown v. Smalls,* 325 S.C. 547, 556, 481 S.E.2d 444, 449 (Ct.App.1997). Similarly, the conduct of a mentally retarded or disabled client of a residential home training program should be judged by the behavior to be expected of a person of like age, intelligence, and experience under like circumstances.

The factfinder may consider relevant standards of care from various sources in determining whether a defendant breached a duty owed to an injured person in a negligence case. The standard of care in a given case may be established and defined by the common law, statutes, administrative regulations, industry standards, or a defendant's own policies and guidelines. *See e.g. Steinke v. S.C. Dept. of Labor, Licensing & Regulation,* 336 S.C. 373, 387–89, 520 S.E.2d 142, 149–50 (1999) (affirmative legal duty may be created by statute which establishes the standard of care); *Clifford v. Southern Ry. Co.,* 87 S.C. 324, 69 S.E. 513 (1910) (statute may create special duty of care and breach of that statute may constitute negligence per se); *Peterson v. Natl. R.R. Passenger Corp.,* 365 S.C. 391, 397, 618 S.E.2d 903, 906 (2005) (although federal regulations provided standard of care, internal policies of company which owned the line of track and railroad which owned the train were not preempted by federal law, and company's and railroad's deviation from own internal policies was admissible as evidence they deviated from standard of

care, thus breaching duty owed to plaintiff, in lawsuit brought by plaintiff injured in train derailment); *Elledge v. Richland/Lexington School Dist. Five,* 352 S.C. 179, 186, 573 S.E.2d 789, 793 (2002) (general rule is that evidence of industry safety standards is relevant to establishing the standard of care in a negligence case); *Tidwell v. Columbia Ry., Gas & Elec. Co.,* 109 S.C. 34, 95 S.E. 109 (1918) (relevant rules of a defendant are admissible in evidence in a personal injury action regardless of whether rules were intended primarily for employee guidance, public safety, or both, because violation of such rules may constitute evidence of a breach of the duty of care and the proximate cause of injury); *Caldwell v. K–Mart Corp.,* 306 S.C. 27, 31–32, 410 S.E.2d 21, 24 (Ct.App.1991) (when defendant adopts internal policies or self-imposed rules and thereafter violates those policies or rules, jury may consider such violations as evidence of negligence if they proximately caused a plaintiff's damages); *Steeves v. U.S.,* 294 F.Supp. 446, 455 (D.S.C.1968) (violation of a rule or regulation which is designed primarily for the safety of hospital patients will constitute negligence if the violation proximately results in the injury); Restatement (Second) of Torts § 285 (1965) (standards of conduct of reasonable man may be established by statute, regulation, court's interpretation of statute or regulation, judicial decision, or as determined by trial judge or jury under facts of a case).

Appellant cites federal Medicaid or Medicare regulations in her complaint, and both Appellant and Babcock Center mention various statutes, regulations, and program guidelines in their briefs. We express no opinion on particular standards of care which may be relevant and properly applied in this case. The identification of sources establishing the standard of care with regard to Appellant will be an issue for the parties and court on remand of this case.

In sum, we find the existence of a common law duty owed by Babcock Center to Appellant. The precise extent and nature of that duty, which is grounded in relevant standards of care, and whether the duty was breached must be determined by a jury on remand.

## II. DUTY OF CARE OWED BY DEPARTMENT

Appellant argues the circuit court erred in granting summary judgment to Department on the ground it owes no legal

duty of care to Appellant. Appellant asserts Department and the direct provider of services, independent contractor Babcock Center, both owe a duty to exercise reasonable care with regard to Appellant. Appellant asserts Department's duty of care is grounded in both the common law and in various statutes and regulations pertaining to Department. We agree Department owes a common law duty, but decline to address the issue of Department's statutory duty.

## A. DEPARTMENT'S DUTY UNDER THE COMMON LAW

As explained above, under the common law, a private person or business entity which accepts the responsibility of providing care, treatment, or services to a mentally retarded or disabled client has a duty to exercise reasonable care in supervising the client and providing appropriate care and treatment to the client. Thus, to the extent Appellant relies on this common law duty, summary judgment was wrongly granted to Department. *See Arthurs ex rel. Estate of Munn v. Aiken County*, 346 S.C. 97, 103–105, 551 S.E.2d 579, 582–83 (2001) (public duty rule is applied only when an action is founded upon a statutory duty; when duty is based on common law, then its existence is analyzed as it would be with a private defendant which is not a government entity pursuant to Tort Claims Act); *Trousdell v. Cannon*, 351 S.C. 636, 641, 572 S.E.2d 264, 266–67 (2002) (same); *Morris v. Anderson*, 349 S.C. 607, 611–12, 564 S.E.2d 649, 651–52 (2002) (same); S.C.Code Ann. § 15–78–40 (2005) (governmental entity is liable for its torts "in the same manner and to the same extent as a private individual under like circumstances," subject to limitations upon and exemptions from liability and damages contained in Tort Claims Act).

When a governmental entity owes a duty of care to a plaintiff under the common law and other elements of negligence are shown, the next step is to analyze the applicability of exceptions to the waiver of immunity contained in S.C.Code Ann. § 15–78–60 (2005 & Supp.2005) which are asserted by the governmental entity. *Arthurs*, 346 S.C. at 105, 551 S.E.2d at 583; *Trousdell*, 351 S.C. at 642, 572 S.E.2d at 267. The governmental entity claiming an exception to the waiver of immunity under the Tort Claims Act has the burden

of establishing any limitation on liability. *Strange v. S.C. Dept. of Highways & Pub. Transp.*, 314 S.C. 427, 430, 445 S.E.2d 439, 440 (1994).

Department asserts it is not liable for the torts of its independent contractor, Babcock Center, pursuant to S.C.Code Ann. § 15–78–60(20) (2005), which provides that a governmental entity is not liable for an "act or omission of a person other than an employee including but not limited to the criminal actions of third persons." Department also has asserted and the circuit court relied on S.C.Code Ann. § 15–78–30(c) (2005), which provides that the term "employee" "does not include an independent contractor doing business with the State."

We find this position unpersuasive because Department owes a common law duty of care directly to Appellant. The fact an independent contractor provided services to Appellant or the fact a third party may have committed a criminal act in harming Appellant does not affect the existence of Department's duty. In *Greenville Memorial Auditorium v. Martin*, this Court held the city liable for a patron's personal injuries resulting from the criminal acts of another despite the city's claim of immunity under § 15–78–60(20). 301 S.C. 242, 391 S.E.2d 546 (1990). The Court found liability based on the city's negligence in adequately securing the premises where the negligence created a foreseeable risk of injury. *Id.* We find that the Department's potential liability in this case could be based on a similar principle. Although the Department is not liable for the acts or omissions of its independent contractor, Department remains under a duty to provide reasonable care and treatment to its clients. If Department is negligent in its duty, which may include 1) adequately supervising the provision of services by another entity or 2) its own conduct in relation to prior notice of inappropriate care of its clients by such entity, Department may be held liable for breach of its common law duty provided such negligence creates a foreseeable risk of and causes injury.

■ Next, Department asserts it is immune from liability under S.C.Code Ann. § 15–78–60(4) (2005), which provides that a governmental entity is not liable from "adoption, enforcement, or compliance with any law or failure to adopt or

enforce any law, whether valid or invalid, including, but not limited to, any charter, provision, ordinance, resolution, rule, regulation, or written policies." This argument was neither presented to nor ruled on by the circuit court; therefore, it is not preserved for appellate review. *E.g. Smith v. Phillips,* 318 S.C. 453, 458 S.E.2d 427 (1995) (with very limited exceptions, appellate court may not address an issue unless the issue was raised to and ruled on by the trial court).

The circuit court also relied on S.C.Code Ann. § 15–78–60(25) (2005). This subsection provides that a governmental entity is not liable from "responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any student, patient, prisoner, inmate, or client of any governmental entity, except when the responsibility or duty is exercised in a grossly negligent manner."

 "Gross negligence is ordinarily a mixed question of law and fact." *Faile,* 350 S.C. at 332, 566 S.E.2d at 545 (citing *Clyburn v. Sumter County School Dist. # 17,* 317 S.C. 50, 451 S.E.2d 885 (1994)). "When the evidence supports but one reasonable inference, it is solely a question of law for court, otherwise it is an issue best resolved by the jury. . . . In most cases, gross negligence is a factually controlled concept whose determination best rests with the jury." *Id.* at 332, 566 S.E.2d at 545. We conclude that the issue of whether Department acted in a grossly negligent manner is a factual issue for a jury.

In sum, we find the existence of a common law duty owed by Department to Appellant. Whether the duty was breached and whether the Department met the applicable standard of care must be determined by a jury on remand.

B. DEPARTMENT'S STATUTORY DUTY AND IMPACT OF PUBLIC DUTY RULE

In *Arthurs,* we explained that

[t]he public duty rule presumes statutes which create or define the duties of a public office have the essential purpose of providing for the structure and operation of government or for securing the general welfare and safety of the public. Such statutes create no duty of care towards individual members of the general public. . . . The public duty

rule is a negative defense which denies an essential element of the plaintiff's cause of action: the existence of a duty of care to the individual plaintiff. . . . It is not a matter of immunity, which is an affirmative defense that must be pleaded and which may be waived. Further, it is a rule of statutory construction, that is, a means of determining whether the legislative body that enacted the statute or ordinance intended to create a private cause of action for its breach. . . .

The public duty rule insulates public officials, employees, and governmental entities from liability for the negligent performance of their official duties by negating the existence of a duty towards the plaintiff.

*Arthurs*, 346 S.C. at 104, 551 S.E.2d at 582 (citations and quotes omitted).

We retained the public duty rule, finding it compatible with the Tort Claims Act. However, the rule is applied only when an action is founded upon a statutory duty, not when the duty is grounded in the common law. *Arthurs*, 346 S.C. at 103–05, 551 S.E.2d at 582–83,

As explained in *Arthurs*,

[a]n exception to the general rule exists when the statutory duty is owed to individuals rather than to the public at large. Our courts are reluctant to find a special duty. . . . [T]his Court [has] adopted a six part test developed by the Court of Appeals . . . for determining when such a "special duty" exists:

(1) an essential purpose of the statute is to protect against a particular type of harm;

(2) the statute, either directly or indirectly, imposes on a specific public officer a duty to guard against or not cause that harm;

(3) the class of persons the statute intends to protect is identifiable before the fact;

(4) the plaintiff is a person within the protected class;

(5) the public officer knows or has reason to know the likelihood of harm to members of the class if he fails to do his duty; and

(6) the officer is given sufficient authority to act in the circumstances or he undertakes to act in the exercise of · his office.

*Arthurs,* 346 S.C. at 106, 551 S.E.2d at 583; *accord Steinke,* 336 S.C. at 388–89, 520 S.E.2d at 149–50; *Jensen,* 304 S.C. at 200, 403 S.E.2d at 617.

In the present case, Department's operations and responsibilities, as well as the care, treatment, and rights of mentally retarded or disabled persons, are governed by a comprehensive scheme of statutes and regulations. *See e.g.* S.C.Code Ann. §§ 44–20–10 to –1170 (2002 & Supp.2005) (S.C. Mental Retardation, Related Disabilities, Head Injuries, and Spinal Cord Injuries Act); S.C.Code Ann. §§ 44–21–10 to –80 (2002) (Department of Disabilities and Special Needs Family Support Services); S.C.Code Ann. §§ 44–23–10 to –1150 (2002 & Supp. 2005) (provisions applicable to both mentally ill and mentally retarded persons); S.C.Code Ann. §§ 44–26–10 to –220 (2002) (rights of mental retardation clients); and 26 S.C.Code Ann. Regs. 88–105 to 88–920 (Supp.2005) (regulations promulgated by Department of Disabilities and Special Needs). Department's operations and responsibilities also are affected by internal standards, policies, and guidelines it has promulgated for particular programs as a result of statutes or regulations.[5]

We express no opinion on the issues of whether Department owes a duty grounded in statutes or regulations, or whether Department owes a special duty to Appellant under the analysis of the public duty rule set forth in *Arthurs, Steinke,* and *Jensen.* The parties have not addressed these issues, which may be explored on remand of this case.

III. PROXIMATE CAUSE

Appellant contends the circuit court erred in ruling that the proximate cause of any damages suffered by Appellant, as a matter of law, was Appellant's own voluntary and intentional acts. We agree.

Negligence is not actionable unless it is a proximate cause of the injury. *Hanselmann v. McCardle,* 275 S.C. 46, 48, 267 S.E.2d 531, 533 (1980). Proximate cause requires proof of both causation in fact and legal cause. *Oliver v. S.C.*

---

5. See footnote 3.

*Dept. of Highways and Pub. Transp.*, 309 S.C. 313, 316, 422 S.E.2d 128, 130 (1992). Causation in fact is proved by establishing the injury would not have occurred "but for" the defendant's negligence. Legal cause is proved by establishing foreseeability. *Id.*; *Koester v. Carolina Rental Ctr., Inc.*, 313 S.C. 490, 493, 443 S.E.2d 392, 394 (1994). Foreseeability is determined by looking to the natural and probable consequences of the complained of act, although it is not necessary to prove that a particular event or injury was foreseeable. *Koester*, 313 S.C. at 493, 443 S.E.2d at 394; *Oliver*, 309 S.C. at 317, 422 S.E.2d at 131; *Childers v. Gas Lines, Inc.*, 248 S.C. 316, 325, 149 S.E.2d 761, 765 (1966).

The defendant's negligence does not have to be the sole proximate cause of the plaintiff's injury; instead, the plaintiff must prove the defendant's negligence was at least one of the proximate causes of the injury. *Hughes v. Children's Clinic, P.A.*, 269 S.C. 389, 398, 237 S.E.2d 753, 757 (1977). The question of proximate cause ordinarily is one of fact for the jury, and it may be resolved either by direct or circumstantial evidence. The trial judge's sole function regarding the issue is to inquire whether particular conclusions are the only reasonable inferences that can be drawn from the evidence. *Childers*, 248 S.C. at 324, 149 S.E.2d at 765; *McNair v. Rainsford*, 330 S.C. 332, 349, 499 S.E.2d 488, 497 (Ct.App.1998).

We hold that the issue of whether Appellant's injuries were proximately caused by the alleged negligence of Respondents is an issue of fact for the jury. The jury must determine whether Appellant's damages would have occurred "but for" Respondents' alleged negligence, as well as whether such damages were foreseeable, i.e., whether the damages were the natural and probable consequence of a failure to exercise reasonable care in supervising and providing care and treatment to Appellant. The jury may perform its task after gaining a proper understanding of the facts and circumstances of Appellant's case, as well as the applicable standards of care.

We further agree with Appellant that the circuit court erred in reasoning she was competent to make her own decisions—such as leaving the Babcock Center home—because she was not adjudicated incompetent to handle her

personal and financial affairs until some two years after the events of August 1995. The circuit court relied on S.C.Code Ann. § 44–26–90 (2002), which provides that unless a client has been adjudicated incompetent, she must not be denied the right to, among other things, execute instruments, enter into contractual relationships, and exercise rights of citizenship in the same manner as a non-disabled person.

Appellant alleges she has the emotional and intellectual capacity of a young child. Her actions and the alleged negligence of Respondents must be assessed in light of her mental abilities and the standards governing Respondents' duty of care. Appellant's competence and ability to handle her own affairs, or the lack thereof, is a factual issue related to proximate cause which must be resolved by a jury.[6] The circuit court erred in granting summary judgment to Respondents on the ground of proximate cause.

## IV. STATUTE OF LIMITATIONS

Appellant argues the circuit court erred in relying on the two-year statute of limitations contained in S.C.Code Ann. § 15–78–100(a) (2005) to rule that certain allegations of Department's negligence are time-barred. Appellant does not raise this issue in her Statement of Issues, but she does challenge the ruling in her brief. Given our remand of this case, we will address this issue to avoid future debate and confusion about it.

While the circuit court order is rather vague on this point, Department argued at the summary judgment hearing that

---

6. Babcock Center contends Appellant is arguing she was not competent to testify due to her mental retardation, i.e., Babcock Center focuses on Appellant's competency to testify as opposed to her competency to make her own decisions. The circuit court focused on Appellant's competency to act on her own, not her competency to testify. As far as competency to testify, Appellant should be treated as a person of like age, intelligence, and experience. *Cf. State v. Green,* 267 S.C. 599, 603, 230 S.E.2d 618, 619 (1976) (there is no fixed age which an individual must attain in order to be competent to testify as a witness); *S.C. Dept. of Soc. Servs. v. Doe,* 292 S.C. 211, 219, 355 S.E.2d 543, 547 (Ct.App. 1987) (child's competency to testify depends on showing to the satisfaction of the trial judge that child is substantially rational and responsive to the questions asked and is sufficiently aware of the moral duty to tell the truth and the probability of punishment if he lies).

allegations relating to the initial evaluation and admission of Appellant in 1994 were time-barred. Department apparently believes that only events occurring within the two years preceding the service of the complaint (i.e., 1995–97) may be considered, but cites no authority for this proposition. We disagree.

The events in question occurred August 30, 1995. Appellant served her initial complaint on Department on August 29, 1997, meeting the two-year deadline. Accordingly, allegations relating to Department's alleged negligence in connection with Appellant's initial evaluation and admission in 1994 are not time-barred.

### CONCLUSION

We reverse the circuit court and hold that Babcock Center and its employee have a common law duty to exercise reasonable care in supervising and providing care and treatment to Appellant, a mentally retarded client with disabilities and special needs. Department also owes a common law duty to Appellant and statutory exceptions to the waiver of immunity which Department asserts are inapplicable. We decline to reach the issues of whether Department owes a statutory duty or the impact of the public duty rule. We hold that whether the breach of a duty proximately caused Appellant's injuries is a question of fact for the jury. Finally, we hold that allegations relating to Department's alleged negligence in connection with Appellant's initial evaluation and admission are not time-barred.

**REVERSED.**

TOAL, C.J., MOORE, WALLER, JJ., concur.

PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES concurring:

I concur in the result reached by the majority because I agree that Babcock Center owed a common law duty of due care to Appellant. I write separately because I do not agree with that portion of the majority opinion that finds a duty based upon statute. In my opinion, the source of the duty owed to Appellant is not found in or created by any statute.

Rather, as indicated in footnote 3 of the majority opinion, some of the statutes cited in the opinion "may be relevant in ... defining the appropriate standard of care."