713 S.E.2d 656

Samuel G. SMITH, Sr., Melissa Smith, and Samuel G. Smith, Jr., an infant under the age of Fourteen (14) years, by and through his next friend, Samuel G. Smith, Appellants,

v.

The REGIONAL MEDICAL CENTER OF ORANGEBURG AND CALHOUN COUNTIES, Elizabeth A. Lewis, D.O., and AMN Healthcare, Inc. d/b/a Staff Care, Defendants,

Of whom The Regional Medical Center of Orangeburg and Calhoun Counties is the Respondent.

No. 4847.

Court of Appeals of South Carolina.

Heard March 9, 2011.

Decided June 22, 2011.

Rehearing Denied Aug. 23, 2011.

Charles L. Henshaw, Jr., of Columbia, for Appellant.

Richard B. Ness, of Bamberg, for Respondent.

KONDUROS, J.

The parents of Samuel G. Smith, Jr., brought a negligence claim on behalf of themselves and their minor child (collectively the Smiths) for the treatment Smith received from The Regional Medical Center of Orangeburg and Calhoun Counties (TRMC), a governmental entity under the Tort Claims Act (TCA).[1] The Smiths appeal the trial court's granting of partial summary judgment to TRMC based on its finding that a governmental hospital cannot be held liable for the negligent acts or omissions of an independent contractor, as prescribed by the TCA. The Smiths argue TRMC should be held liable under a nondelegable duty of care owed by a hospital. We affirm.

---

1. TRMC qualifies as a governmental entity because it is a governmental health care facility within the definition of section 15–78–30(j) of the South Carolina Code (2005), which states a " 'governmental health care facility' means one which is operated by the State or a political subdivision through a governing board appointed or elected pursuant to statute or ordinance and which is tax-exempt under state and federal laws as a governmental entity and from which no part of its net income from its operation accrues to the benefit of any individual or nongovernmental entity." Specifically, TRMC is funded by Orangeburg and Calhoun counties.

## FACTS

On November 1, 2000, Smith was taken to TRMC for emergency services. Smith had a previous medical history of seizures related to his genetic disorder, tuberous sclerosis. Upon his arrival to the emergency room, Smith was observed to be cyanotic and not breathing. After several attempts to revive him, it was decided that an endotracheal tube for oxygenation was needed and Dr. Elizabeth Lewis was called to the emergency room to administer the placement of the tube.

Dr. Lewis placed the tube into Smith's airway; however, his condition did not improve. It was determined that the tube was not functioning properly because it was misplaced. The Smiths offered testimony from an expert that the tube was five centimeters longer than it needed to be and the length "unnecessarily endangered" Smith because it obstructed his airway. The Smiths further asserted that because of the misplacement, he was deprived of oxygen and suffered hypoxic brain injury.

At the time of this event, Dr. Lewis was providing anesthesia coverage at TRMC on a temporary basis through Staff Care, which had an agreement to place physicians in the hospital. Dr. Lewis had an employment contract with Staff Care.

The Smiths commenced this lawsuit on November 1, 2002. The trial court ordered that Dr. Lewis be added as a defendant on the allegations that she was an independent contractor. The Smiths allege Dr. Lewis and TRMC jointly undertook to render emergency services and anesthesiology care. Through that care, the Smiths argue Smith suffered deprivation of oxygen resulting in a brain injury that could have been prevented or mitigated had Dr. Lewis exercised due care. Specifically, they contend Dr. Lewis was negligent in failing to (1) manage Smith's airway, (2) timely realize the misplacement of the endotracheal tube, and (3) timely reposition the tube.

The trial court granted partial summary judgment in favor of TRMC. The trial court indicated under a plain reading of the TCA, TRMC could not be held vicariously liable for any negligence on the part of Dr. Lewis, because she was an independent contractor. This appeal followed.

## STANDARD OF REVIEW

The purpose of summary judgment is to expedite the disposition of cases not requiring the services of a fact finder. *George v. Fabri,* 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the trial court under Rule 56(c), SCRCP; summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose,* 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002) (citations omitted). "Determining the proper interpretation of a statute is a question of law, and this Court reviews questions of law de novo." *Town of Summerville v. City of N. Charleston,* 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008).

## LAW/ANALYSIS

■ The Smiths contend the trial court erred in concluding a governmental hospital cannot be held liable for the negligent acts or omissions of an independent contractor. They argue governmental hospitals cannot maintain immunity by hiring independent contractors to perform medical services, citing a nondelegable duty of care owed by a hospital to emergency room patients. We disagree.

■ "The doctrine of nondelegable duty has traditionally been used to describe a form of vicarious liability." Martin C. McWilliams, Jr. & Hamilton E. Russell, III, *Hospital Liability for Torts of Independent Contractor Physicians,* 47 S.C. L.Rev. 431, 452 (1996). "The real effect of finding a duty to be nondelegable is to render not the duty, but the liability, not delegable . . . ." *Id.*

> A person may delegate a *duty* to an independent contractor, but if the independent contractor breaches that duty by acting negligently or improperly, the delegating person remains *liable* for that breach. It actually is the liability, not the duty that is not delegable. The party which owes the nondelegable duty is vicariously liable for the negligent acts of the independent contractor.

*Simmons v. Tuomey Reg'l Med. Ctr.,* 341 S.C. 32, 42, 533 S.E.2d 312, 317 (2000) (citations omitted) (emphasis added).

Thus, "the doctrine of nondelegable duty is an exception to the general rule of nonliability for the torts of independent contractors." McWilliams & Russell, 47 S.C. L.Rev. at 453.

On appeal, the Smiths do not contend that the trial court erred in its determination that Dr. Lewis was an independent contractor. Rather, they cite *Simmons* for the proposition that TRMC is liable for the negligence of Dr. Lewis despite the fact that she does not meet the definition of "employee" under the TCA. The Smiths argue the nondelegable duty of a hospital to render emergency services, recognized in *Simmons*, permits a governmental hospital to be liable for the negligence of an independent contractor. However, the duty discussed in *Simmons* does not necessarily apply to an independent contractor of a government hospital. *Simmons* merely found a nongovernmental hospital could not delegate its duty to render competent emergency room services to its patients and, therefore, may be vicariously liable for the negligence of an independent contractor. 341 S.C. at 50–51, 533 S.E.2d at 322. In this case, we are presented with whether a governmental hospital subject to the TCA may be liable for alleged negligent acts or omissions committed by an independent contractor. We find it cannot.

Unlike the private hospital analyzed in *Simmons*, TRMC is a governmentally funded hospital that is statutorily governed by the TCA. The TCA "governs all tort claims against governmental entities and is the exclusive civil remedy available in an action against a governmental entity. . . ." *Flateau v. Harrelson*, 355 S.C. 197, 203, 584 S.E.2d 413, 416 (Ct.App.2003). The Legislature has stated its intent to "grant the State, its political subdivisions, and employees, while acting within the scope of official duty, immunity from liability and suit for any tort except as waived." S.C.Code Ann. § 15–78–20(b) (2005). "The State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages" contained in the TCA. S.C.Code Ann. § 15–78–40 (2005). Furthermore, the code provides the provisions of the TCA "must be liberally construed in favor of limiting the liability of the State." S.C.Code Ann. § 15–78–20(f) (2005).

Specifically excluded from the definition of "employee," however, are independent contractors:

"Employee" means any officer, employee, agent, or court appointed representative of the State or appointed officials, law enforcement officers, and persons acting on behalf or in service of a governmental entity in the scope of official duty including, but not limited to, technical experts whether with or without compensation, but the term *does not include an independent contractor doing business with the State or a political subdivision of the State.*

S.C.Code Ann. § 15–78–30(c) (Supp.2010) (emphasis added). Therefore, the entity is not liable for a loss resulting from "an act or omission of a person other than an employee including but not limited to the criminal actions of third persons." S.C.Code Ann. § 15–78–60(20) (2005).

Because TRMC is a governmental entity, the TCA governs the civil claims and remedies to which TRMC is subject. The TCA codifies qualified and limited liability and shields the state and its political subdivisions, like TRMC, from liability for certain acts and omissions. The Legislature, through the TCA, has (1) stated its intention for independent contractors to be excluded from the definition of employee, (2) mandated strict construction of statutory language, (3) developed a policy of liberally construing the TCA in favor of immunity and limiting liability, and (4) declared that the TCA is the public policy of South Carolina.

Nevertheless, Smith argues *Madison v. Babcock Center, Inc.,* 371 S.C. 123, 638 S.E.2d 650 (2006), requires a finding that TRMC may be liable as a government entity for the acts of its independent contractor. We disagree. *Madison* specifically held that a governmental entity to which the immunity exemptions of the TCA applied is not liable for the acts or omissions of its independent contractor. *Id.* at 142–43, 638 S.E.2d at 660. However, the court found a governmental entity could be liable for a duty directly owed, independent of any acts or omission of the independent contractor. *Id.* (stating this duty "may include (1) adequately supervising the provision of services by another entity or (2) its own conduct in relation to prior notice of inappropriate care of its clients by such entity"). Essentially, if the duty breached is one owed

directly by the governmental entity to the client, the TCA's immunity may not insulate the entity from liability.

Here, the trial court order and briefs on appeal discuss only the alleged negligent breach of Dr. Lewis's duty and TRMC's vicarious liability for that breach. The TCA and *Madison* foreclose a finding of liability against TRMC on that basis.

## CONCLUSION

The TCA provides immunity to governmental entities, such as TRMC, from the negligence of its independent contractors. Accordingly, the judgment of the trial court is

**AFFIRMED.**

FEW, C.J., and THOMAS, J., concur.