Maureen WALSH

v.

**AVALON AVIATION, INC., et al.**

No. CIV. S 00–328.

United States District Court,
D. Maryland.

Jan. 2, 2001.

See also, 118 F.Supp.2d 675.

Albert Thomas Morris, Kirkpatrick & Lockhart, LLP, Washington, DC, for Maureen Walsh.

Robert L. Ferguson, Jr., Ferguson, Schetelich Heffernan, P.A., Baltimore, MD, Roderick R. Barnes, Freishtat & Sandler, Baltimore, MD, for Avalon Aviation, Inc., Estate of Hank Griffioen, Foad Talebnejad.

Mark A. Dombroff, Dombroff & Gilmore, P.C., Washington, DC, Teresa Graham, Dombroff & Gilmore, New York, NY, for Potomac Airfield Airport.

Leonard C. Redmond, III, Baltimore, MD, David S. Scott, Scott & Scott, Baltimore, MD, for Priscilla Marbury Priscilla Marbury Ryan Hoffer, Catherine Lancaster Ryan Erhard, Thomas A. Erhard.

## MEMORANDUM OPINION

SMALKIN, District Judge.

In an opinion entered earlier in this case, *Walsh v. Avalon Aviation*, 118 F.Supp.2d 675 (D.Md.2000), this Court refused to recognize a duty on the part of landowners adjacent to an airport to prune tall trees with which a pilot collided during a failed takeoff attempt. Other defendants in the case include Potomac Airfield (or P.G. Airpark), the private, but public-use (*i.e.*, non-municipal) airport in question. Potomac has now moved for summary judgment. The motion has been fully briefed, and no oral hearing is necessary. Local Rule 105.6, D. Md.

The criteria for summary judgment in this Court are well-established. That is, the party which demonstrates, by a properly-supported motion, a clear entitlement to judgment in its favor, is entitled to summary judgment, unless the opponent of the motion produces evidence upon which a reasonable fact-finder could base a finding for the opponent, by the appropriate proof burden, considering the case as if it were at the directed verdict stage. Fed. R.Civ.P. 56(c). *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Neither the Court nor the parties has discerned any authority for holding a private airport liable for a pilot's collision with obstructions beyond the airport boundary during a failed takeoff attempt. Based on this Court's assessment of existing law, it is firmly of the opinion that the Court of Appeals of Maryland, were it presented with this question, would not impose liability upon the airport owner or operator. (It is this Court's duty to predict state law in a diversity case such as this, where there is no binding or persuasive state authority on point. *See Wilson v. Ford Motor Co.*, 656 F.2d 960 (4th Cir. 1981)).

It is undisputed in this case that the pilot in command was negligent, in several ways. First, he violated 14 C.F.R. (FAR) § 91.17(a)(3), because he had been using a drug that affected his faculties in a way contrary to safety, as demonstrated by the presence of marijuana in his blood on postmortem examination. Furthermore, as plaintiff's expert has pointed out, the pilot in command violated his duty to operate the aircraft in a safe manner under FAR § 91.3(a), by failing to utilize the appropriate short field takeoff technique under the conditions prevailing at the time of the departure, taking into account aircraft load and weight and ambient temperature. (The flaps were fully retracted rather than set to the recommended 25 degrees to provide extra lift.)

The question now is whether the airport was also negligent, and if so, whether such negligence was a proximate cause of the plaintiff's injuries. (It will be recalled that the plaintiff, a potential student pilot, was riding along as a passenger when the flight instructor acting as pilot-in-command failed to attain sufficient altitude on takeoff to clear trees on land adjoining the departure end of runway 06. She survived the resulting crash, with serious injuries, for which the Court has already held the adjoining landowners not liable as a matter of Maryland law.)

Potomac is a privately-owned, non-municipal airport operating under a licence duly issued by the Maryland Aviation Administration (MAA), which took into account approach-path obstacles by requiring displaced thresholds on both ends of the runway (06 and 24). Plaintiff correctly notes that the MAA had expressed concern about the trees and, in the addendum to her opposition, questions the continuing validity of the MAA's waiver of obstruction requirements, but the MAA's concerns were only with the approach path, not any departure path (a matter of some consequence, as will later appear). The fact remains that the airport in fact held a license to operate on the day in question.

The plaintiff claims, in essence, that despite the license, the airport did not comply with regulations establishing, in effect, a 20:1 glide slope profile for the runway, because the trees projected into the airspace so defined. The difficulty for the plaintiff is that the regulations in question deal with the landing approach, not the departure, of aircraft.

It is highly relevant, both to the issues of alleged regulatory noncompliance and proximate causation on account of such, that this accident occurred during a failed departure, not an approach. This is because there is a vast difference between approach and departure profiles of aircraft, which is reflected in the fact that there are no federal regulatory criteria for departure paths, as contrasted to approach paths. The latter are set by regulation, viz., FAR § 77.25, establishing imaginary surfaces (including airspace radiating upwards and beyond the airport boundary) "according to the type of *approach* available or planned for that runway." (Emphasis added.) The MAA's regulations (COMAR Title 11, Subtitle 03, Chapter 05) are even more explicit in their reference to the approach in dealing with obstructions. For example, "imaginary surfaces," which radiate beyond the airport perimeter, are based on "the most precise available or planned *approach path*...." COMAR section 11.03.05.01.B(8) (emphasis added). Furthermore, the operative part of the regulations, COMAR section 11.03.04.B–D, classifies runways by, and sets their imaginary surfaces with reference to, the types of approaches (ranging from visual only to ILS) in use, with no reference to departures.

There is a sound, practical reason for this limitation. For example, even the ordinary airline passenger is familiar with the commonly-employed instrument landing system (ILS) approach to landing, which calls for a shallow descent along a glide slope that is relatively shallow and standard in profile across the spectrum of all fixed-wing aircraft, from a Cessna two-seater to a Boeing 747. To a lesser extent, all other approaches, both IFR and VFR, are also standardized as a matter of good operating technique. On the other hand, as most airline passengers have also experienced, departure paths are highly variable in steepness, almost always much steeper than an approach path for the same aircraft. This is because departure paths depend not only upon the aircraft's general performance, but also upon variables such as its loading, environmental conditions (such as ambient temperature and humidity), and · pilot technique. Therefore, the Court can find utterly no basis in Maryland law for holding that the airport was negligent, in any way constituting a substantial factor contributing to this departure crash, simply by utilizing, for departure purposes, a runway licensed by the Maryland Aviation Administration, even if it knew that there were regulatory concerns with the *approach* profile for the runway.

Finally, as to this point, the Court notes, with some considerable dismay, that plaintiff's addendum inserts material into the MAA Report of Waiver in such a way as to make it appear that the material was in the original, by using parenthesis rather than brackets. In legal writing, it is commonly accepted that matter added editorially is bracketed, not surrounded by parentheses, as plaintiff's counsel apparently knows from having done it thus in other quotations. Here, the plaintiff took the statement "[t]he approach slope to runway 24 is obstructed...." and altered it in footnote 1 of the addendum to read "[t]he approach slope to runway 24 (the departure area for runway 06) is obstructed...." The original document makes no mention of "departure area," and for good reason, because, as the court has pointed out, there is no such thing recognized in the regulations.

The next question is whether the airport was negligent, aside from any regulatory issues, in continuing to operate notwithstanding the tall trees bordering its prop-

erty off the end of the runway. Such liability cannot, obviously, rest on any claim classically pertinent to a landowner's obligation to those on its property, because any injury due to conditions on neighboring property is plainly outside the scope of the duty owed by a landowner to persons utilizing its own property, and this is not a case of the sort where a landowner's activities on the property (such as keeping wild animals) causes injury to those off the property. Certainly, the plaintiff can point to no authority from Maryland or any other jurisdiction for the proposition that the airport, whether in its capacity as a landowner or as an airport operator, had a common-law duty (much less any right) to require the neighboring landowners to prune or cut down the trees with which the aircraft collided when unable successfully to climb out on departure.

■ The plaintiff also claims that the airport had a duty to warn her of the hazard posed by the trees. To be sure, it has been held that airports have a duty to warn *pilots* of certain hazards obstructing takeoff and departure, *see Mills v. Orcas Power & Light Co.*, 56 Wash.2d 807, 815–16, 355 P.2d 781 (1960). In this case, however, there is no evidence of such a failure to warn or that the pilot in command, a flight instructor regularly operating from Potomac, did not otherwise know of the presence of the trees, or that, for that matter, they were not perfectly obvious. Indeed, no reasonable fact-finder could possibly conclude that the pilot did not know the trees were there, thus rendering any possible failure to warn on the part of the airport irrelevant. While the plaintiff claims that *she*, not just the pilot, was owed a warning, that claim is obviously legally unsound, if not frivolous. Any failure of the airport to warn Ms. Walsh about possible hazards on takeoff could not conceivably have contributed to this accident. As her deposition shows, she knew so little about aviation that she didn't even know what an airplane's rudder does to control the aircraft in flight. Walsh depo.

at 67. The idea that an airport has a duty to warn passengers of potential hazards to flight ignores the reality that passengers cannot possibly be warned of all the hazards to aviation that might result in a crash—if that were the case, no one would ever get on any plane, and the warning process would take so long that air travel would grind to a halt. No sensible court— and the Court of Appeals of Maryland is sensible indeed—could conceivably hold of such a duty to warn passengers of flight hazards.

■ The plaintiff also claims that the airport owner had a duty to obtain the grant of an easement over (or, perhaps, to purchase) the property on which the trees grew. The plaintiff claims that *County of Westchester v. Town of Greenwich, Conn.*, 76 F.3d 42 (2d. Cir.1996), relied upon in the Court's earlier decision, recognizes the existence of such a duty. It is true that there was a discussion in that case of the airport operator's duty to obtain the necessary easement or purchase property necessary to meet the FAA's *approach path* requirements for increased operations, but that discussion was only in the context of FARs §§ 77.21–77.25, which the court specifically identified as "FAA rules governing the clear space necessary to a runway approach." *County of Westchester,* 76 F.3d at 46, and which do not apply, in any event, to airports, like Potomac, not federally subsidized. Furthermore, that case concerned an expanded scope of operations desired to be implemented by the airport, not existing operations, and the court's bottom-line holding simply was that the airport could not effectively obtain rights in its neighbor's property such as would allow expanded operations by claiming that the neighbor's property was a nuisance.

Finally, although *Mills, supra,* discussed the possibility that an easement could be obtained by the airport, this was in the context of a state statute that specifically authorized the municipality in which the airport was located to obtain an

easement (and, apparently, to do so by condemnation) over adjacent land on which obstructions were located. Here, there is no evidence of any similar Maryland statute applicable to private airport operators, and, quite obviously, a private entity has no power at common law to condemn an easement over a neighbor's property. The Court also expressly declines to hold that a private airport has a duty to purchase an easement from a neighbor. To impose such a duty would be not only unprecedented, but also unwise, for a host of reasons. Not the least among these is the fact that, lacking the power to condemn, the private airport owner—powerless to force a neighbor to grant it an easement—would be at the mercy of its neighbor, who could extract an exorbitant price for what amounts to pruning a few trees. This, the Court of Appeals of Maryland would also never require.

Finally, the Court is aware that the plaintiff's expert opined that the presence of the trees was a cause of the accident and that the airport violated a duty of reasonable care in allowing them to be there. As to the facts, the expert is undoubtedly correct, at least as to but-for causation; were the trees not there, the pilot would not have hit them or entered an aerodynamic stall to avoid them. Nonetheless, the presence of the trees does not bring down liability upon the airport, absent violation of some legal duty on the airport's part to see to it that they were not there. With all due regard to the plaintiff's expert, who is certainly well-qualified as to aviation matters, his say-so cannot create a legal duty where none is recognized by the law of the jurisdiction.

For the reasons stated, an Order will be entered separately, granting the motion of the defendant, Potomac Airfield, for summary judgment. The Court is disinclined to consider any motion for reconsideration of this Opinion, unless it has overlooked controlling legal authority of the Court of Appeals or the Court of Special Appeals of Maryland. Counsel for the plaintiff and any remaining parties are to submit a joint status report as to anything that remains to be done in this case, within 15 calendar days of the date hereof.

### ORDER AND JUDGMENT

For the reasons stated in the foregoing Memorandum Opinion, it is, this 2nd day of January, 2001, by the Court, ORDERED AND ADJUDGED:

1. That defendant Potomac Airfield's Motion for summary judgment BE, and the same hereby IS, GRANTED;

2. That judgment BE, and it hereby IS, entered in favor of defendant Potomac Airfield, and against the plaintiff; and

3. That the Clerk of Court mail copies hereof to counsel for the parties.