**CUMMINS ATLANTIC, INC., Plaintiff,**

v.

**SONNY'S CAMP–N–TRAVEL MART, INC., Defendant.**

**C.A. No. 2:06–379–PMD.**

United States District Court,
D. South Carolina,
Charleston Division.

March 21, 2007.

John H. Tiller, Haynsworth Sinkler Boyd, Charleston, SC, for Plaintiff.

Timothy A. Domin, Clawson and Staubes, Charleston, SC, for Defendant.

## ORDER

DUFFY, District Judge.

This matter is before the court upon Defendant Sonny's Camp–N–Travel Mart, Inc.'s ("Defendant" or "Sonny's") Motion for Summary Judgment. For the reasons set forth herein, the court grants Defendant's motion.

## BACKGROUND

The facts of this case, considered in the light most favorable to Plaintiff, are as follows:

On or about June 19, 2003, Cummins Atlantic, Inc. ("Cummins" or "Plaintiff") installed a generator on a recreational vehicle ("RV") that had been converted for use as a mobile dental facility. Plaintiff admits that it did not properly complete its work, and as a result, the generator was not properly ventilated. Plaintiff again had contact with the RV when it serviced the generator on August 27, 2003, but Plaintiff did not notice the exhaust problem. On October 27, 2003, the owner of the RV, Barbara Ferran, took it to Sonny's [1] for an oil change on the RV's genera-

---

**1.** In its Memorandum in Support of its Motion for Summary Judgment, Defendant states that it "is not a full service engine repair or RV repair facility. Sonny's performs 'Dshop repairs' which involve basic repairs, oil changes, electrical repairs and body work. Sonny's does not perform any complicated engine repairs and does not install generators." (Def.'s Mem. in Support at 2.) Defen-

tors. (Ferran Dep. 11:4–11:17, Dec. 20, 2006.) At her deposition, Ms. Ferran indicated that Sonny's never indicated it would be performing a comprehensive check of the generator systems and that she did not expect Sonny's to do any form of safety inspection on the generators. (Farran Dep. 11:18–12:3.)

On October 27, 2003, after Sonny's changed the oil in the RV's generators,[2] several individuals were present in the mobile dental unit, including dentist Penelope Cralle, dental hygienist Ivis Cuni, and several others receiving dental treatment. Because the RV's generator was not properly ventilated, these individuals were exposed to carbon monoxide gas and suffered personal injuries.[3] Both Cralle and Cuni filed suit against Cummins in the United States District Court for the District of South Carolina, and several of the other individuals filed claims against Cummins.

From June 2005 through January 2006, Centennial Insurance Company and United States Fire Insurance Company, on behalf of Cummins, paid Cralle, Cuni, and the other individuals in excess of $8,000,000 in full and complete settlement for any and all claims they had resulting from the carbon monoxide poisoning incident.

On February 7, 2006, Cummins filed suit against Sonny's, seeking contribution pursuant to South Carolina's Uniform Contribution Among Tortfeasors Act. *See* S.C. CODE ANN. §§ 15–38–10 *et seq.* According to Cummins,

> [T]he Defendant Sonny's, as a joint tortfeasor with Plaintiff Cummins, is legally liable to contribute its pro rata share of liability for the claims which the Plaintiff Cummins has settled, in that the Plaintiff Cummins has paid more than its pro rata share of common liability, pursuant

---

dant cites to the deposition of Spencer Jacobs for support. A review of the excerpted portion of Jacobs's testimony, however, reveals only that (1) Sonny's changed the oil in engines as part of the services it offered and (2) Jacobs had previously changed the oil in generators at Sonny's. (Jacobs Dep. 16:5–17:23, Oct. 26, 2006.) Plaintiff does not argue, however, that Defendant *installs* generators or performs engine repair. In any event, it is undisputed that on October 27, 2003, the only work Sonny's performed on the generators was an oil change.

2. It appears the RV had two generators, one of which was properly ventilated and one which was not.

3. Defendant submits evidence that an individual who did not enter the RV after the oil change on October 27 suffered injury from carbon monoxide poisoning. The deposition testimony of Randolph W. Waid, Ph.D., reveals the following:

> Q. [L]et's, I guess, first identify Sonya Ferran, who was not on the van that day.
> A. That's correct.
> Q. She nevertheless complained of some of the same symptoms as the folks who

were there on the day where there was an acute exposure; is that correct?
> A. That is correct.
> Q. Okay. And in general maybe tell me what kind of complain[t]s Sonya Ferran had, even though she was not there on the van at the acute exposure day.
> A. My understanding, from Ms. Ferran when I evaluated her, was during the period of time leading up to the high exposure incident, there [were] symptoms of increased irritability, increased heart rate, high blood pressure, hot flashes, and more prominent [were] headache, dizziness and fatigue.

(Waid Dep. 8:8–8:24; Oct. 18, 2006.) Plaintiff does not present contrary evidence but says, "Though some evidence exists that, prior to October 27, 2003 and in hindsight, some symptoms of carbon monoxide exposure were experienced possibly by one person who worked in the RV, no evidence exists as to what levels of carbon monoxide were being emitted from the improperly ventilated generator prior to the catastrophically high levels experienced only after Defendant's service on the generator on October 27, 2003." (Pl.'s Mem. in Opp'n at 13.)

to South Carolina Uniform Contribution Among Joint Tort Feasors Act [sic], S.C.Code Annotated §§ 15–38–10, et seq. (1976, as amended), and therefore the Plaintiff Cummins is entitled to recover from Defendant Sonny's its pro rata share of payments for liability for the claims resulting from the [carbon monoxide poisoning] incident ..., as well as the costs associated with the pursuit of this action.

(Compl.¶ 23.) Spencer Jacobs, the employee of Sonny's believed to have changed the oil in the RV's generators, had his deposition taken on October 26, 2006, at which he testified that he did not see the exhaust problem. (Jacobs Dep. 32:7–32:23.) Defendant Sonny's filed a Motion for Summary Judgment on February 5, 2007. Plaintiff has filed a Response, to which Defendant filed a Reply.

### STANDARD OF REVIEW

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991). "[T]he plain language of Rule 56(c) man-

dates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party 'is particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548.

### ANALYSIS

Defendant Sonny's moves for summary judgment, arguing (1) Sonny's did not have a duty to discover the defect created by Cummins and (2) Sonny's was not a joint tortfeasor. (Def.'s Mem. in Support at 4–5.)[4] Plaintiff, on the other hand, argues summary judgment is not appropriate because "a genuine and material factual dispute exists as to what was known and what should have been known to those representatives of Defendant involved in performing the RV generator oil change." (Pl.'s Mem. in Opp'n at 7.) According to Plaintiff, genuine issues of material fact must be resolved "in order to determine whether Defendant's having undertaken to perform maintenance on the generator gave rise to a duty to identify and report the obvious exhaust problems to the owner." (Pl.'s Mem. in Opp'n at 7.)

The parties thus disagree on the question of duty. " 'Generally, there is no

---

**4.** The court does not reach Sonny's argument that it was not a joint tortfeasor. The court finds that Sonny's did not have a duty to

inspect the generators for exhaust problems, and thus the argument over whether Sonny's was a joint tortfeasor is moot.

common law duty to act.... Thus, a person usually incurs no liability when he fails to take steps to protect others from harm not created by his own wrongful conduct.'" *Wogan v. Kunze,* 366 S.C. 583, 610, 623 S.E.2d 107, 121 (Ct.App.2005), *cert. granted,* 2007 S.C. LEXIS 34 (S.C., Jan. 5, 2007) (quoting *Dennis by Evans v. Timmons,* 313 S.C. 338, 342, 437 S.E.2d 138, 141 (Ct.App.1993)). Although "there is no general duty to control the conduct of another or to warn a third person or potential victim of danger," there are exceptions to this rule. *Madison ex rel. Bryant v. Babcock Ctr., Inc.,* 371 S.C. 123, 136, 638 S.E.2d 650, 656 (2006).[5] "An affirmative legal duty may be created by statute, a contractual relationship, status, property interest, or some other special circumstance." *Id.* at 136, 638 S.E.2d at 656–57. "The mere fact that [a plaintiff's] injuries may have been foreseeable does not create a duty to prevent those injuries. For negligent conduct to be actionable, it must violate some specific legal duty owed to [the plaintiff]." *Bauer v. United States,* 882 F.Supp. 516, 519 (D.S.C.1995) (citations omitted).

■ The issue of whether a duty arises is a question of law for the court. As the Court of Appeals of South Carolina stated,

> The issue of negligence is a mixed question of law and fact. The court must first determine whether a duty arises in one party to exercise reasonable care for the benefit of another under the facts of a given case. The existence and scope of the duty are questions of law. Thereafter, the jury determines whether a breach of the duty has occurred, and the resulting damages.

*Staples v. Duell,* 329 S.C. 503, 506–07, 494 S.E.2d 639, 641 (Ct.App.1997) (quoting *Miller v. City of Camden,* 317 S.C. 28, 31, 451 S.E.2d 401, 403 (Ct.App.1994)); *see also Steinke v. S.C. Dep't of Labor, Licensing & Regulation,* 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999) ("The court must determine, as a matter of law, whether the law recognizes a particular duty."); *Washington v. Lexington County Jail,* 337 S.C. 400, 405, 523 S.E.2d 204, 206 (Ct.App.1999) ("The existence of a duty owed is a question of law for the courts.") If the court determines "there is no duty, then the defendant in a negligence action is entitled to a judgment as a matter of law." *Madison,* 371 S.C. at 135–36, 638 S.E.2d at 656.

■ As previously noted, Plaintiff argues summary judgment is not appropriate because "genuine issues of material fact exist that must be resolved in order to determine whether Defendant's having undertaken to perform maintenance on the generator gave rise to a duty to identify and report the obvious exhaust problems to the owner." (Pl.'s Mem. in Opp'n at 7.)[6] However, even Plaintiff recognizes the

---

**5.** These five exceptions are: "(1) where the defendant has a special relationship to the victim; (2) where the defendant has a special relationship to the injurer; (3) where the defendant voluntarily undertakes a duty; (4) where the defendant negligently or intentionally creates the risk; and (5) where a statute imposes a duty on the defendant." *Madison,* 371 S.C. at 136, 638 S.E.2d at 656 (citing *Faile v. S.C. Dep't of Juvenile Justice,* 350 S.C. 315, 334, 566 S.E.2d 536, 546 (2002)).

**6.** Plaintiff also argues that circumstantial evidence exists as to Defendant's negligence.

(*See* Pl.'s Mem. in Opp'n at 9.) Plaintiff argues the following creates a reasonable inference of negligence: (1) the fact that Defendant was the last one to work on the generator prior to the carbon monoxide exposure and (2) testimony that a mechanic changing the generator's oil should have recognized the obvious exhaust defects. It is true that negligence can be established by circumstantial evidence. *See Boyd v. Marion Coca–Cola Bottling Co.,* 240 S.C. 383, 126 S.E.2d 178, 179 (1962). However, the fact that negligence can be established by circumstantial evidence does not

existence of a duty and its scope are questions of law for the court. Plaintiff states,

> Though some of the issues in this case may ultimately be legal rather than factual in nature, those legal issues (e.g., the existence of a duty and the scope of the duty) cannot be determined in this case prior to full hearing and understanding of the facts concerning expecta-

tions in the industry in connection with what is standard and expected of those performing services such as generator oil changes.

(Pl.'s Mem. in Opp'n at 4 n. 2.) Plaintiff argues, in essence, that because it has produced expert testimony that Sonny's should have noticed the exhaust problem, the court should not grant Sonny's Motion for Summary Judgment.[7]

obviate Plaintiff's burden to establish duty. *Cf. Watts v. Metro Sec. Agency*, 346 S.C. 235, 239, 550 S.E.2d 869, 870–71 (Ct.App.2001) ("The elements for a cause of action in negligence are: 1) a duty of care owed to the plaintiff by the defendant; 2) a breach of that duty by some negligent act or omission; and 3) damage proximately resulting from that breach. All three elements must be present or the cause of action will fail."); *see also Shain v. Leiserv, Inc.*, 328 S.C. 574, 577, 493 S.E.2d 111, 113 (Ct.App.1997) (noting that the plaintiff in a negligence case has the burden of establishing duty).

7. At the trial of Barbara Ferran's claims against Cummins, Kendrick Richardson was qualified as an expert on Ms. Ferran's behalf. He opined that Sonny's should have recognized the defect:

> On that day, the day this accident happened [October 27, 2003], as I understand it, they went to Sonny's for an oil change. They changed the oil in both generators. And because of that they had their hands on both generators and had to get under them to drain the oil out and that sort of thing. They're working on them, they should have—they were in a position that they should have been able to recognize that it was improperly installed, like you guys [Cummins].

(Trial Tr. 106, Mar. 13, 2006.) Mr. Richardson's deposition testimony is very similar:

> My opinion is that Sonny's had an obligation to properly inspect and maintain—properly inspect this generator system when they do an oil change. They had their hands on it, they had to reach under it to drain the oil, they spun the oil filter, refilled it, ran the auxiliary area, looked for leaks supposedly around oil filters, they are there touching it, feeling it, having all of that experience and they should also be aware of the concern in the industry for the potential of injury by carbon monoxide poi-

soning or death. So they do have an obligation to look for exhaust hazards, and especially since they are so obvious on dealing with the piece of equipment, touching, feeling, and inspecting it.

(Richardson Dep. 18:8–18:22, Oct. 26, 2006.) Plaintiff also points to the deposition testimony of Bryan R. Durig, Ph.D., for support:

> Q. In this case if the condition of the unit was such that it did not have that extension, would you expect that anybody who was working on any part of the unit would somehow see that defect?
>
> A. If you were working on it you would see it. Like you said, wouldn't you recognize it? If you were going to replace the mirrors, yes, it's visible. But if you're in working on those generators I think you've got your face within about six inches of where it needs to be. It would definitely be visible to you.
>
> Q. Is it your understanding that checking the exhaust is part of the standard procedure for doing an oil change or are you simply saying that given the proximity of the technician to the exhaust that you would think that they would catch it?
>
> A. Well, kind of both. One, you're definitely working that close, you can see it. Two, after you change the oil and start the engine to make sure it's working right you're going to start the one and the exhaust gasket is going to blow right back on you and you start the other one and if it doesn't, you right quick would say something is different here.

(Durig Dep. 29:13–30:13, Dec. 15, 2006.)

Plaintiff also points to the testimony of Spencer Jacobs for support that Defendant should have noticed the exhaust problem in changing the oil:

> Q. As you look at Exhibit 3, obviously hindsight is 20/20, but is the missing tailpipe fairly obvious[ ] to you?
>
> A. If I was walking onto this unit without prior knowledge of the work done at Cum-

The court does not agree with Plaintiff. Barbara Ferran, the RV owner, contracted with Sonny's to have Sonny's change the oil in the RV's generators. Sonny's did just that, and there is no allegation that injuries occurred because Sonny's used the wrong type of oil or failed to replace the drain plug after changing the oil. Rather, Plaintiff argues that because Sonny's changed the oil in the generators, Sonny's had a duty to inspect and warn of problems with the generator's exhaust.

■ Plaintiff has the burden of establishing a duty, *see Shain,* 328 S.C. at 577, 493 S.E.2d at 113, and the court finds Plaintiff has not met his burden to show that Sonny's had a duty to inspect the generator's exhaust system. "When a mechanic undertakes to repair a vehicle, the mechanic impliedly assumes a duty to make the repairs in a skillful, careful, diligent, and workmanlike manner." *Reiland v. Southland Equip. Serv., Inc.,* 330 S.C. 617, 635, 500 S.E.2d 145, 154 (Ct.App. 1998), *abrogated on other grounds by Webb v. CSX Transp., Inc.,* 364 S.C. 639, 615 S.E.2d 440 (2005) (citing *Hutson v. Cummins Carolinas, Inc.,* 280 S.C. 552, 314 S.E.2d 19 (Ct.App.1984)). However, the fact that Sonny's undertook to change the oil in the RV's generators does not mean that Sonny's had a duty to inspect the generator for exhaust problems.

Both parties cite *Byerly v. Connor,* 307 S.C. 441, 415 S.E.2d 796 (1992) for support. In *Byerly,* the issue was whether the respondent, "by and through its wholly owned state utility, Santee Cooper ...., owed a duty to warn of a latent hazardous condition which it did not create and about which it had no knowledge." *Byerly,* 307 S.C. at 442–43, 415 S.E.2d at 797. Karl Byerly was electrocuted when he dove into Lake Marion from a houseboat which was moored to a dock constructed and maintained by one of Santee Cooper's lessees. *Id.* at 443, 415 S.E.2d at 798. The lower court granted summary judgment in favor of Santee Cooper "on the ground that ... Santee Cooper had no duty to warn the decedent that a latent hazardous condition" existed at the marina. *Id.* at 443, 415 S.E.2d at 798.

On appeal, the plaintiff argued, *inter alia,* that Santee Cooper had a "special duty to discover and to warn of the latent hazardous condition" stemming from the fact that Santee Cooper undertook to inspect the dock at the marina. *Id.* at 444, 415 S.E.2d 796, 415 S.E.2d at 798. Santee Cooper's agent conducted yearly inspections of the docks and piers on the lake "solely for the purpose of ensuring that the docks and piers conform[ed] to structural requirements of permits issued by Santee Cooper." *Id.* at 445, 415 S.E.2d at 799. This inspection, however, did not

---

mins, this is just fresh off the road, and if I was going to do an oil change with this thing, curiosity would get the better of me.
Q. And lawyers pick at words, and what would you be curious about?
A. Where the hell is the other exhaust pipe?
(Jacobs Dep. 40:15–41:3.) Despite this testimony about the obviousness of the missing tailpipe, Mr. Jacobs testified he did not notice the tailpipe was missing when he performed the oil change. Thus the inquiry must be whether Sonny's, in changing the oil in the generators, had a duty to inspect the generators' exhaust system.

Though Defendant argues the court should not consider Plaintiff's expert testimony in ruling on Sonny's Motion for Summary Judgment, the court declines to address the argument. The question of duty is a legal question for this court, not Plaintiff's experts. *See Walsh v. Avalon Aviation, Inc.,* 125 F.Supp.2d 726, 730 (D.Md.2001); *cf. United States v. Chapman,* 209 Fed.Appx. 253, 269 (4th Cir. 2006) ("Having an expert testify more generally about the existence and scope of a fiduciary duty under various ... securities laws could confuse the jury and usurp the district court's obligation to explain the governing law to the jury.").

give rise to the duty to discover and warn of the latent defect. The Supreme Court of South Carolina stated,

> Santee Cooper has undertaken a limited duty to use due care to discover structural nonconformity with permits. We find that the trial judge did not err in holding that Santee Cooper's undertaking to inspect for structural conformity did not include a duty to inspect for a latent hazardous condition at [the marina].

*Id.* at 445, 415 S.E.2d at 799.

Plaintiff argues the holding in *Byerly* supports its position, stating, "Had Defendant performed service on some part of the RV other than the generators, an argument might exist that no duty existed to identify and report obvious defects with the generators ..." (Pl.'s Mem. in Opp'n at 10.) The court does not agree with Plaintiff's interpretation of *Byerly*. In *Byerly*, Santee Cooper inspected the dock, and it was the dock that had the electrical problem. However, the fact that Santee Cooper inspected the dock for structural nonconformity did not mean Santee Cooper undertook a duty to inspect the dock for a latent hazardous electrical condition. *Byerly*, 307 S.C. at 445, 415 S.E.2d at 799. *Byerly* thus supports Defendant's assertion that in undertaking to change the oil in the RV's generators, it did not undertake to inspect the generators' exhaust systems. The court accordingly finds that Sonny's did not have a duty to inspect the generators' exhaust systems and therefore grants Sonny's Motion for Summary Judgment.

## CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Defendant's Motion for Summary Judgment is hereby **GRANTED.**

**AND IT IS SO ORDERED.**