Lizzette M. Bouret **ECHEVARRIA**, et al., Plaintiffs,

v.

**CARIBBEAN AVIATION MAINTENANCE CORP.** et al., Defendants.

Civil Nos. 09–2034 (GAG), 09–2142(GAG), 09–2158(GAG), 09–2160(GAG).

United States District Court, D. Puerto Rico.

Jan. 12, 2012.

Carlos J. Morales–Bauza, Antonio Rosello–Rentas, Rossello & Morales, CSP, Peter John Porrata, Peter John Porrata Law Office, Doris Quinones–Tridas, Quinones Tridas Law Office, PSC, Luis Elvin Gonzalez–Ramos, Rivera Mercado & Rivera Cordero Law Office, San Juan, PR, for Plaintiffs.

PHV Richard Ritorto, PHV–Louis R. Martinez, Martinez & Ritorto PC, New York, NY, Jaime E. Morales–Morales, Morales Morales Law Offices, Diego A. Ramos, Carlos J. Ruiz–Irizarry, Fiddler Gonzalez & Rodriguez, P.S.C., San Juan, PR, PHV Tim A. Goetz, Tim A. Goetz, Attorney at Law, Torrance, CA, Humberto Guzman–Rodriguez, Guaynabo, PR, for Defendants.

## ORDER

GUSTAVO A. GELPÍ, District Judge.

Plaintiffs filed the present action against Robinson Helicopter Co. ("Robinson"), Caribbean Aviation Maintenance, Corp. and Chartis Insurance Company—Puerto Rico ("CAM Defendants") (collectively "Defendants") for the events that led to the death of Diego Vidal Gonzalez ("Vidal Gonzalez"). On November 12, 2008 a helicopter piloted by Jose A. Montano ("Montano") and carrying Vidal Gonzalez suffered severe damage while attempting to land at the Fernando Luis Ribas Dominicci Airport. Vidal Gonzalez was rushed to the Rio Piedras Medical Center where he was

treated for injuries. Vidal Gonzalez lapsed into a coma and died 59 days later. Through the various consolidated actions Vidal Gonzalez's widow and three children, his son, his father and sisters, and Montano (collectively "Plaintiffs") brought suit against Defendants for damages, claiming it was the negligence of Defendants that led to the death of Vidal Gonzalez.

The present matter is a motion *in limine* filed by Plaintiffs requesting the court to preclude the expert testimony of Philip Greenspun, Ph.D. ("Greenspun"). (*See* Docket Nos. 186, 291 [1] & 298.) Particularly, Plaintiff Montano requests the court preclude all testimony regarding Montano's legal status to fly pursuant to the FAA regulations. (*See* Docket No. 298.) Defendants argue Dr. Greenspun is qualified as an expert to testify regarding piloting a helicopter, as well as the qualifications in order to obtain the legal status of a pilot through the Federal Aviation Administration ("FAA"). (*See* Docket No. 320.) After reviewing the pleadings and pertinent law, the court **DENIES** Plaintiffs' motion to preclude Greenspun from testifying as an expert witness.

## I. Legal Standard

 The admission of expert testimony is governed by Federal Rule of Evidence 702. That rule provides that, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the wit-

ness has applied the principles and methods reliably to the facts of the case." FED. R.EVID. 702. The trial court acts as a gate-keeper as the judge must ensure an expert's testimony is both relevant and is based on a reliable foundation. *See Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *U.S. v. Mooney,* 315 F.3d 54, 62 (1st Cir.2002).

 The *Daubert* Court identified four factors that may assist the trial court in determining whether or not scientific expert testimony was reliable: "(1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline." *Mooney,* 315 F.3d 54, 62 (1st Cir.2002) (citing *Daubert,* 509 U.S. at 593–94, 113 S.Ct. 2786). These factors were later held to apply to all expert testimony, not just scientific testimony. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The factors are not a checklist for the trial judge to follow, but rather the inquiry is a flexible one, allowing the trial judge to determine and adapt these factors to fit the particular case at bar. *See Kumho,* 526 U.S. at 150, 119 S.Ct. 1167; *Milward v. Acuity Specialty Prods. Grp, Inc.,* 639 F.3d 11, 15–16 (1st Cir.2011). While the general focus of this inquiry is the principles and methodology relied upon by the expert, the court may consider the congruity of the data and the opinion proffered by the expert. *See Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (holding a court may conclude there is too great an

1. Plaintiff Montano also filed a motion *in limine* requesting Greenspun be precluded from testifying as an expert witness at Docket No. 291. That entry was later amended to include an attachment. Both motions are identical except for the attachment.

analytical gap between data and the opinion proffered); *Ruiz—Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir.1998).

## II. Legal Analysis

Greenspun drafted an expert report which concluded with eleven opinions (Docket No. 186–1). Plaintiffs initially argue Greenspun should not be allowed to testify as an expert because the methodology he employed to reach his opinions are not scientific. (*See* Docket No. 186 at 14–16.) Plaintiffs particularly rely upon the fact that Greenspun ignored facts testified to within deposition testimony, the National Transportation Safety Board ("NTSB") report, and did not review Montano's FAA record. (*See id.*) Defendants point to Greenspun's education and experiences as an instructor and pilot as qualification as an expert in piloting and knowledge of flying a helicopter. (*See* Docket No. 320.) The court will analyze Greenspun's eleven opinions as two categories, one involving Montano's legal status to fly, the other involving the crashworthiness of the Robinson R–44 helicopter.

### A. Compliance with Federal Aviation Regulations (Opinions 1–8, 10)

■ Applying Rule 702 and the factors listed in *Daubert*, the court finds Greenspun's expert testimony in the areas of operating and piloting helicopters would be helpful to the jury as flying helicopters and the required training in order to do so is a specialized field, is technical, and not readily known to the average juror. Knowledge of field will help the trier of fact in deciding if any negligence on the part of the pilot led to the events of November 12, 2008.

Plaintiffs argue Greenspun should not be an expert because he failed to meet the first prong of Rule 702—that his testimony is not based on sufficient facts or data. Plaintiffs attack Greenspun's report because he failed to review FAA documents dealing with Montano's training throughout the years. However, Greenspun did review Montano's pilot log books as well as the NTSB's report and Docket. Pursuant to federal regulations, Montano is required to keep an up to date pilot logbook. *See* 14 C.F.R. § 61.51 (2011). Further, Montano's FAA record was detailed in the NTSB report and Docket. (*See* Docket No. 320 at 11, Fn. 7). Based on Greenspun's review of Montano's pilot logbook and the information contained in the NTSB materials, Greenspun had before him sufficient information in order to make the determination that Montano was not in compliance with the FAA Regulations.

Plaintiffs do not aggressively attack the remaining two prongs of Rule 702 and it is sufficiently demonstrated through Greenspun's years as a pilot and through his position as a flight instructor that he has knowledge of the FAA regulations and can adequately read a pilot's logbook and determine if the pilot is current with flight time and educational requirements of the FAA. The court finds that Greenspun's method of reviewing the pilot's logbook as well as other documentary evidence regarding the hours and education of Montano to be reliable and applied to the facts of this case.

Plaintiffs do make one last effort to persuade the court that only an official from the FAA may determine the legality of Montano's status as a pilot on the day in question. But an official from the FAA is not necessary to demonstrate violations of Federal Aviation Regulations ("FAR"). FARs are put in place in order to regulate and provide a standard of care for pilots to maintain. *See In re Air Crash at Lexington, Kentucky,* No. 5:06–CV–316–KSF, 2008 WL 2954973, at *7 (E.D.Ky. July 30,

2008). Violations of FARs is some evidence of negligence. *See id. See also Walsh v. Avalon Aviation, Inc.*, 125 F.Supp.2d 726, 727 (D.Md.2001) (holding expert witness may point out violations of FARs).

While Greenspun is allowed to testify as to his opinions regarding Montano's compliance with the FARs, Plaintiffs are not barred from bringing their own expert, if timely announced, to rebut this testimony or from furnishing Montano's complete FAA record, if his logbook was incomplete. For the reasons stated above, the court **DENIES** Plaintiffs' motion *in limine* to preclude Greenspun's testimony as an expert witness.

**B. Crashworthiness of the Robinson R–44 (Opinions 9 & 11)**

█ Greenspun's opinions numbered 9 and 11 deal with the 'crashworthiness' of Robinson R–44 helicopters. Greenspun states the basis for his determination of the crashworthiness of this specific type of helicopter rests on his knowledge of the design of the Robinson R–44 which he gained from reading the Pilot's Operating Handbook, his understanding of the collective-throttle correlator and upon his education and training at a safety training course sponsored by Robinson Helicopter Company. (*See* Docket Nos. 186 at ¶ 30; 320 at 13.)

Again, Greenspun's education and experiences are the foundation of his knowledge in this area and serve reasonable source of information in order to be deemed an expert. His methodology of applying the principles he knows to the facts as he understands them to be is reliable and proper and he has applied those principles to the facts of this case. Greenspun is appropriately offered as an expert in testifying regarding the crashworthiness of the Robinson R–44 helicop-

ter under these circumstances. For the foregoing reasons the court **DENIES** Plaintiffs' motion *in limine* to preclude Greenspun's testimony as an expert witness.

**III. Conclusion**

For the reasons set forth above, the court **DENIES** Plaintiffs' motion *in limine* to preclude Greenspun from testifying as an expert witness (Docket Nos. 186, 291, & 298).

**SO ORDERED.**